# GROSS *v.* UNITED STATES MORTGAGE COMPANY.

IN ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Decided May 7th, 1883.

*Constitutional Law—Illinois—Mortgage—Practice—Statutes.*

The question considered as to when the opinion of the highest court of a State may be examined for the purpose of ascertaining whether the judgment involves the denial of any asserted right under the Constitution, laws, or treaties of the United States.

In view of the statutory requirement that the justices of the Supreme Court of Illinois shall file and spread at large upon the records of the courts written opinions in all cases submitted to it, such opinions may be examined, in connection with other portions of the record, to ascertain whether the judgment or decree necessarily involves a federal question within the reviewing power of this court.

The act of the general assembly of Illinois, in force July 1st, 1875, validating loans or investments previously made in that State by corporations of other States or countries authorized by their respective charters to invest or loan money, is not in conflict with the contract clause of the federal Constitution, nor with that part of the Fourteenth Amendment forbidding a State from depriving any person of property without due process of law.

Benjamin Lombard negotiated with the United States Mortgage Company—a corporation of the State of New York, having its principal office and place of business in the city of New York—a loan of $50,000 in gold coin, to be used in the erection of buildings upon certain unimproved lots in the city of Chicago, of which he was the owner in fee.   To secure the payment of that sum, with interest, at the rate of nine per cent. per annum, payable semi-annually in gold coin, he executed—his wife joining him—to that company, August 22d, 1872, a mortgage upon the said premises, covenanting therein to pay the debt and interest; that the premises were clear of all encumbrances; that he would warrant and defend the same, suffering no impairment of the mortgage security; and that the mortgage should stand as security for any money paid for taxes or insurance. The mortgage provided that, if default was made in the payment of any interest instalment, or there was a failure to pay the taxes or assessments on the premises, or keep any other covenant contained in the mortgage, that the whole of the debt should become at once due at the option of the mortgage company, with the right in the latter to sell the property to the highest bidder after thirty days' advertisement in some paper published in Chicago.   The mortgage also contained this clause:

"It is understood and agreed that this mortgage is to be subject to the right of the city to take so much of said lots as shall be necessary for the opening of and extension of Dearborn street, being thirty-six feet, more or less, off the west end of said premises; in which event any benefit which may accrue to the said party of the first part herein may be paid by the city to said party of the first part direct."

The mortgage, upon the day of its execution, was filed and recorded in the proper office.

On the 10th day of December, 1872, Lombard sold and conveyed with warranty the whole of the mortgaged premises—together with the buildings which had been erected thereon with the money borrowed from the United States Mortgage Company—to the National Life Insurance Company of Chicago, of which he was president and a principal stock-

holder.   That conveyance was made expressly subject to the before-mentioned mortgage.   The consideration was $100,173, a part of which was in the assumption of the debt due the United States Mortgage Company.   In part payment also of the purchase money, the insurance company executed and delivered to Lombard its promissory note for $12,273 (drawn to its own order and by it indorsed in blank), payable three years after date, with interest payable semi-annually at the rate of ten per cent. per annum.   To secure the payment of this note the insurance company, on the same day, executed and delivered to one J. L. Lombard, as trustee, a trust deed, conveying the whole of said premises, with covenants of warranty.   That deed was duly recorded.   Of that note and trust deed Gross subsequently became the owner, the note coming into his possession with the indorsement only of the insurance company.

On or about March 17th, 1873, by proper legal proceedings, thirty-five feet off the west end of said lots were condemned by the city for the purposes of a street.   The sum of $10,952.73 was awarded as compensation for the ground so taken, and $15,897.84 were afterwards assessed as the value of the benefits to the remaining portion of the premises.

Benjamin Lombard made default in the payment of interest due, on and after October 1st, 1873, and failed to pay any taxes or assessments on the property after 1872.   On the 1st day of January, 1874, the mortgage company elected to declare the whole debt due.

On or about June 1st, 1874, the insurance company was adjudged a bankrupt, and an assignee thereof was appointed. Lombard was also declared a bankrupt.   Neither he nor the insurance company left any known assets to meet their obligations.

By an act of the general assembly of Illinois, in force July 1st, 1875, entitled " An Act to enable corporations in other States and countries to lend money in Illinois, and to enforce their securities and to acquire title to real estate as security," it was declared, among other things:

"That any corporation formed under the laws of any other

State or country, and authorized by its charter to invest or loan money, may·invest or loan money in this State. And. any such corporation that may have invested or lent money, as aforesaid, may have the same rights and powers for the recovery thereof, subject to the same penalties for usury, as private persons, citizens of this State; and when a sale is made under any judgment, decree, or power in a mortgage or deed, such corporation may purchase, in its corporate name, the property offered for sale, and become vested with the title wherever a natural person might do so in like cases : *Provided, however*, That all real estate so purchased by any such corporation, in satisfaction of any such liability or indebtedness, shall be offered at public auction, at least once every year, at the door of the court-house of the county wherein the same may be situated, or on the premises so to be sold; . . . and said real estate shall be sold whenever the price offered for it is not less than the claim of such corporation, including all interest, cost, and other expenses: *And provided further*, That in case such corporation shall not, within such period of five years, sell such lands, either at public or private sale, as aforesaid, it shall be the duty of the State's attorney to proceed by information, in the name of the people of the State of Illinois, against such corporation, in the circuit court of the county within which such land, so neglected to be sold, shall be situated, and such court shall have jurisdiction to hear and determine the fact, and to order the sale of such land or real estate, at such time and place, subject to such rules as the court shall establish," &c. Laws of Illinois 1875–6, Act of April 9.

For the purpose of settling several conflicting claims in reference to this property, the assignee in bankruptcy of the insurance company brought this suit in the Superior Court of Cook County, Illinois, making the United States Mortgage Company, Gross, and others defendants.

The principal questions in dispute between Gross and the mortgage company were : 1. Whether the latter acquired any valid interest or lien upon the premises as against Gross; and the court of original jurisdiction held that it did. 2. Whether Gross, as the owner and holder of the note for $12,273, was entitled to receive the sum awarded as damages for that part

of the property taken by the city, or whether the mortgage company was entitled to it by reason of the terms of the mortgage. That question was ruled in favor of Gross.

Upon appeal to the highest court of Illinois the judgment of the inferior State court was reversed and set aside, and the cause remanded " for such other and further proceedings as unto law and justice shall appertain, with directions to the Superior Court to enter a decree giving to appellants [the mortgage company] exclusively the amount found against the city as damages, and to Gross no part thereof." It was further adjudged that the mortgage company recover its costs. From that decree this writ of error has been prosecuted.

*Mr. Thomas S. McClelland* for plaintiff in error.—I. In the case at bar the Supreme Court of Illinois has decided that the United States Mortgage Company could not loan money in Illinois, and take real estate security, and that the mortgage made by Lombard to it, August 22d, 1872, was absolutely void and of no effect, both in law and equity. On that question this court will treat the ruling of the Illinois court as the law of this case, and no subsequent rulings of the Illinois court can be considered here. *Sibbald* v. *United States*, 12 Pet. 488; *Tyler* v. *Maguire*, 17 Wall. 253, and cases cited; *Roberts* v. *Cooper*, 20 How. 467–81; *Leese* v. *Clark et al.*, 20 Cal. 387; *Phelan* v. *San Francisco*, Ib. 39; *Chickering* v. *Failes*, 29 Ill. 294; *Rising* v. *Carr*, 70 Ill. 596; *Chicago & Alton Railroad Company* v. *People*, 72 Ill. 82; *Johnson* v. *Von Kettler*, 84 Ill. 315; *Clearklee* v. *Mundell*, 4 Harr. and John. 497. Irrespective of this rule of law, there is another, to wit, that this court, in passing on local questions peculiar to the several States, will adopt the rulings of such State courts as settled at and before the time the transaction occurred which is brought in review before this court, and subsequent decisions of the State court can have no force or effect upon such transactions. *Fairfield* v. *County of Gallatin*, 100 U. S. 47. It is reserved to the States, either by statute or general policy, to determine whether foreign corporations shall do business therein. *Newburg Petroleum Company* v. *Weare*, 27 Ohio St. 343 ; *The State ex rel.*

*Drake* v. *Doyle,* 40 Wis. 175 ; Warton on Conflict of Laws, § 286 ; *Bank of Augusta* v. *Earle,* 13 Pet. 519 ; *Runyan* v. *Coster,* 14 Pet. 122, 130 ; Story on Conflict of Laws, § 430 ; *Paul* v. *Virginia,* 8 Wall. 168 ; *County of San Matteo* v. *Southern Pacific Railroad Company,* 13 Fed. Rep. 722. Such corporations as defendant in error were prohibited in Illinois, at the time it took its security, by statute and general policy. Gen. Incorp. Law of Ill. of 1872, secs. 1 and 26. The contract of mortgage by Lombard to defendant in error, being prohibited by statute and against the manifest policy of the State, is a nullity. *Cincinnati Insurance Company* v. *Rosenthal,* 55 Ill. 85 ; *Carroll* v. *East St. Louis,* 67 Ill. 568 ; *Starkweather* v. *Bible Society,* 72 Ill. 50. The trust deed of Gross is a contract and cannot be postponed to another lien by the legislature. *Sinking Fund* v. *Northern Bank,* 1 Metcalfe (Ky.) 174 ; *Mundy* v. *Monroe,* 1 Manning (Mich.) 68.—II. The act of July 1, 1875, and the decision of the Supreme Court of Illinois, construing it as retroactive and giving it the effect of curing the mortgage of August 22d, 1872, from Lombard to defendant in error, and making that instrument valid as against the note for $12,273, dated December 10th, 1872, secured by trust deed and assigned to Gross before maturity, for a valuable consideration without notice, and before the act of 1875 was passed, are in conflict with article 1, section 10, and article 14, section 1 of Constitution of the United States. Constitution of the United States, art. 1, sec. 10 ; Ib., art. 14, sec. 1 ; Cooley's Const. Lim. 4th ed. 472 ; *Thompson* v. *Morgan,* 6 Minn. 292 ; *Alabama Life Insurance & Trust Company* v. *Boykin,* 38 Ala. 510 ; *Dale* v. *Metcalf,* 9 Penn. St. 109 ; *Orton* v. *Noonan,* 23 Wis. 102 ; *Brinton* v. *Seevers,* 12 Iowa, 389 ; *Russell* v. *Ramsey,* 35 Ill. 362 ; *Conway* v. *Cable,* 37 Ill. 82 ; *Deininger* v. *McConnell,* 41 Ill. 227 ; *Rogers* v. *Higgins,* 48 Ill. 211 ; *Bronson* v. *Kinzie,* 1 How. 311 ; *Edwards* v. *Kearzey,* 96 U. S. 595 ; *Brine* v. *Insurance Company,* 96 U. S. 627 ; *McCracken* v. *Hayward,* 2 How. 608 ; *Barings* v. *Dabney,* 19 Wall. 1 ; *Curran* v. *Arkansas,* 15 How. 304 ; *Meighen* v. *Strong,* 6 Minn. 177 ; *Shonk* v. *Brown,* 61 Penn. St. 320 ; *Pearce's Heirs* v. *Patton,* 7 B. Monroe, 162 ; *McCarty* v. *Hoffman,* 23 Penn. St. 507 ; *LeBois*

v. *Bramel*, 4 How. 449; *Rose et al.* v. *Sanderson*, 38 Ill. 247; *Hunter* v. *Hatch*, 45 Ill. 178; *Norman* v. *Heist*, 5 Watts & Serg. 171; *Wright* v. *Hawkins*, 28 Texas, 452; *Sherwood* v. *Fleming*, 25 Texas (supp.), 408; *Williamson* v. *New Jersey Railroad*, 2 Stewart (N. J.), 311; *Smith* v. *Morse*, 2 Cal. 524; *Garnet* v. *Stockton*, 7 Humph. 84; *Ballard* v. *Ward*, 89 Penn. St. 358; *Bolton* v. *Johns*, 5 Barr, 145.    The law of the State where a contract is made is a part of the contract, and a subsequent act changing the law to the prejudice of either party is void. *Bronson* v. *Kinzie*, 1 How. 311; *Brine* v. *Insurance Company*, 96 U. S. 627; *Edwards* v. *Kearzey*, 96 U. S. 595; *Von Hoffman* v. *Quincy*, 4 Wall. 535; *McCracken* v. *Hayward*, 2 How. 608; *Smoot* v. *Lafferty*, 7 Ill. 383.    And the remedy on such a contract cannot be taken away or materially affected. *Edwards* v. *Kearzey*, 96 U. S. 595; *Bronson* v. *Kinzie*, 1 How. 311; *Mundy* v. *Monroe*, 1 Manning (Mich.) 68; *Williamson* v. *New Jersey Railroad*, 2 Stewart (N. J.), 311.    As to construction of retrospective statutes: *Bruce* v. *Schuyler*, 9 Ill. 221; *Marsh* v. *Chestnut*, 14 Ill. 223; *Hatcher* v. *Toledo Railroad Company*, 62 Ill. 477; *In re Tuller*, 79 Ill. 99; *Thompson* v. *Alexander*, 11 Ill. 54; *Hopkins* v. *Jones*, 22 Ind. 310; *Hackley* v. *Sprague*, 10 Wend. 113; *Shonk* v. *Brown*, 61 Penn. St. 320; *Moore* v. *Phillips*, 7 M. and W. 536.—III. The assignee of a promissory note before maturity, secured by a trust deed, takes it relieved of any equities existing between the original mortgagor and third persons.    *Carpenter* v. *Longan*, 16 Wall. 271; *Kennicott* v. *Supervisors*, Ib. 452; *New Orleans, &c., Company* v. *Montgomery*, 95 U. S. 16; *Sawyer* v. *Prickett*, 19 Wall. 146–166.    The decision of the Supreme Court of Illinois, as to the nature of the right acquired by Gross to the security of the trust deed made by the insurance company, and as to whether it is such a right as could be impaired or destroyed by State legislation, is reviewable in this court; and this court will determine for itself, by reference to the general rules of law appertaining to the subject, as to the nature and extent of that right, and whether it is a right of property protected by the Constitution of the United States.    *Delmas* v. *Insurance Company*, 14 Wall. 661; *University* v. *People*, 99 U. S. 309–321; *Jeffer-*

*son Bank* v. *Skelly*, 1 Black, 436; *Bridge Proprietors* v. *Hoboken Company*, 1 Wall. 116.—IV. Subsequent to the execution of the mortgage from Lombard to the mortgage company, and before July 1, 1875, the date of the act under which the mortgage company could lend money in Illinois and take real estate securities, the city of Chicago condemned the west 35 feet of the property, and a judgment was rendered against it for $10,952 $\frac{73}{100}$, as the value of the 35 feet, which damages, by the terms of the mortgage, were to go to Lombard direct, but Lombard having sold the entire property—including this 35 feet—to the insurance company, and the insurance company having executed a trust deed on the entire property to secure the note bought by Gross, it follows that Gross acquired all of Lombard's interest in these damages. These rights were vested in Gross, and under section 10, article 1, and section 1, article 14 of the Constitution of the United States, could neither be affected by the act of July 1st, 1875, nor by the construction given it by the Illinois Supreme Court in this case.

*Mr. Wirt Dexter* for defendant in error.

Mr. Justice HARLAN, after stating the foregoing facts, delivered the opinion of the court.

The first point to be considered relates to the jurisdiction of this court. The defendant in error insists that it does not appear from the record that the decision of the Supreme Court of Illinois was adverse to any asserted right under the Constitution, laws, or treaties of the United States, nor that the judgment or decree complained of could not have been passed without the determination of any such federal question. *Dugger* v. *Bocock*, 94 U. S. 603; *Murdock* v. *City of Memphis*, 20 Wall. 590. This proposition depends upon the inquiry whether the opinion of the State court, made part of the transcript, can be examined for the purpose of ascertaining the grounds upon which that court based its final decree.

In *Gibson* v. *Chouteau*, 8 Wall. 314; *Rector* v. *Ashley*, 6 Ib. 142, and *Williams* v. *Norris*, 12 Wheat. 117, it was ruled that

the opinion of the State court constituted no part of the record, for the purpose of determining whether this court will re-examine its final judgment or decree. And in *Parmelee* v. *Lawrence*, 11 Wall. 38—where the question arose as to the effect to be given to the certificate of the chief justice of the State court, showing that a federal question was raised and decided adversely to the party bringing the case here for review—it was said:

"If this court should entertain jurisdiction upon a certificate alone, in the absence of any evidence of the question in the record, then the supreme court of the State can give the jurisdiction in every case where the question is made by counsel in argument."

To the same effect are *Lawler* v. *Walker*, 14 How. 149 ; and *Railroad* v. *Rock*, 4 Wall. 177. But in *Murdock* v. *City of Memphis*, 20 Wall. 590, the subject was again under consideration, by reason of the omission from the act of 1867 of that provision in the 25th section of the act of 1789 restricting this court, when reviewing the final judgment or decree of the highest court of a State, to the consideration of such errors as appeared " on the face of the record." It was there said, that, in determining whether a federal question was raised and decided in a State court:

" This court has been inclined to restrict its inquiries too much by this express limitation of the inquiry ' to the face of the record.' " " What was the record of a case," the court observed, speaking by Mr. Justice Miller, " was pretty well understood as a common law phrase at the time that statute was enacted. But the statutes of the States, and new modes of proceedings in those courts, have changed and confused the matter very much since that time. It is in reference to one of the necessities thus brought about that this court long since determined to consider as part of the record the opinions delivered in such cases by the Supreme Court of Louisiana. *Grand Gulf Railroad Company* v. *Marshall*, 12 How. 165 ; *Cousin* v. *Blanc's Executor*, 19 id. 202. And though we have repeatedly decided that the opinions of other State courts cannot be looked into to ascertain what was decided, we see no

reason why, since this restriction is removed, we should not so far examine those opinions, when properly authenticated, as may be useful in determining that question. We have been in the habit of receiving the certificate of the court, signed by its chief justice or presiding judge, on that point, though not as conclusive, and these opinions are quite as satisfactory, and may more properly be treated as part of the record than such certificates."

The opinion of the State court in the present case is properly authenticated, and there is, in addition, the certificate of its chief justice, showing that the present plaintiff in error not only claimed that the deed of trust by the National Life Insurance Company gave, when executed, a lien superior to that asserted by the United States Mortgage Company under Lombard's mortgage, but that the act of the legislature of Illinois, in force July 1st, 1875, in so far as it attempted to validate mortgages like the one taken by that company from Lombard, was in conflict, as well with the contract clause of the Constitution of the United States, as with that part of the 14th Amendment which prohibits a State from depriving a person of property without due process of law; further, that the latter claim was decided adversely to plaintiff in error.

We cannot, therefore, doubt that in the existing state of the law it is our duty to examine the opinion of the Supreme Court of Illinois, in connection with other portions of the record, for the purpose of ascertaining whether this writ of error properly raises any question determined by the State court adversely to a right, title, or immunity, under the Constitution or laws of the United States and specially set up and claimed by the party bringing the writ. Any difficulty existing upon this subject is removed by that provision of the Revised Statutes of Illinois which requires, not only that the justices of the supreme court of the State shall deliver and file written opinions in cases submitted to it, but that " such opinions shall also be spread at large upon the records of the court." Rev. Stat. Ill. 1874, p. 329, ch. 37, § 16. This statutory provision would seem to bring the case within the rule which permits an examination of the opinions of

the Supreme Court of Louisiana to ascertain whether the case was determined upon any ground necessarily involving a federal question within the reviewing power of this court.

The opinion of the State court, 93 Ill. 483, in this case, shows that the decree is based upon these grounds: 1. That the laws of Illinois, in force when the mortgage of August 22d, 1872, was executed, as well as her public policy, as disclosed in legislative enactments for many years, prohibited the United States Mortgage Company from taking mortgages upon real property, in that State, to secure the repayment of money loaned; consequently, that no title passed to it under or by virtue of that mortgage. 2. That such mortgage was, however, validated by the act in force July 1st, 1875. This last proposition was, as the opinion shows, contested in the State court by the present plaintiff in error, upon grounds indicated in the certificate of its chief justice.

We are here met by the suggestion that the decree can be sustained, apart from the validating act of 1875, upon the ground that the mortgage of Lombard to the United States Mortgage Company was not inconsistent with the statutes of Illinois in force at the time of its execution, or with any public policy declared in the legislation of that State. This view is based upon *Stevens* v. *Pratt*, 101 Ill. 206, and *Commercial Union Assurance Company* v. *Scammon*, 102 Ill. 46, determined subsequently to the decree in this case. Those cases directly involved the validity of mortgages upon real estate taken from other parties by the United States Mortgage Company prior to the act of July 1st, 1875. The decision in each was that a loan made by a foreign corporation, prior to that act, to a citizen of Illinois, and secured by mortgage, was neither prohibited by any legislation of that State, nor contrary to its public policy, and that such mortgage could be foreclosed and the title to the mortgaged real estate thereby passed. So much of the opinion of the Supreme Court of Illinois in this case as held to the contrary was expressly declared in *Stevens* v. *Pratt* and *Commercial Union Assurance Company* v. *Scammon*, to be erroneous.

But it is contended, in behalf of plaintiff in error, that the decree below, in so far as it declares Lombard's mortgage to be

invalid, is an adjudication, as between the parties to this case, of a purely local question, of which, upon writ of error, we may not take cognizance; consequently, it is argued, this court, without reference to the later decisions of the State court, must determine the federal question here raised upon the basis established by that court in this case, viz., that Lombard's mortgage was, when given, inoperative, under the local law, to pass title to the United States Mortgage Company. Without expressing any opinion as to the soundness of this position, and assuming, for the purposes of this case only, that Lombard's mortgage was, for the reasons given by the State court, invalid under the local law, we proceed to inquire whether the act of 1875, in its application to that mortgage, is in conflict with any provision of the Constitution of the United States.

That the act in question is not repugnant to the Constitution, as impairing the obligation of a contract, is, in view of the settled doctrines of this court, entirely clear. Its original invalidity was placed by the court below upon the ground that the statutes and public policy of Illinois forbade a foreign corporation from taking a mortgage upon real property in that State to secure a loan of money. Whether that inhibition should be withdrawn was, so far at least as the immediate parties to the contract were concerned, a question of policy rather than of constitutional power. When the legislative department removed the inhibition imposed, as well by statute as by the public policy of the State, upon the execution of a contract like this, it cannot be said that such legislation, although retrospective in its operation, impaired the obligation of the contract. It rather enables the parties to enforce the contract which they intended to make. It is, in effect, a legislative declaration that the mortgagor shall not, in a suit to enforce the lien given by the mortgage, shield himself behind any statutory prohibition or public policy which prevented the mortgagee, at the date of the mortgage, from taking the title which was intended to be passed as security for the mortgage debt. We repeat here what was said in *Satterlee* v. *Matthewson*, 2 Pet. 380, and, in substance, in *Watson* v. *Mercer*, 8 Pet. 88, that "it is not easy to perceive how a law, which gives

validity to a void contract, can be said to impair the obligation of that contract." The doctrine of those cases was approved at the present term, in *Ewell* v. *Daggs,* *ante,* p. 43, where, speaking by Mr. Justice Matthews, it was said, touching legislation of this character,

"that the right of a defendant to avoid his contract is given by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, as long as it remains *in fieri,* and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability he intended to incur." *Ante,* p. 151.

But it is contended that, by his purchase, prior to the passage of the act of 1875, of the note secured by the deed of trust given by the National Life Insurance Company, the plaintiff in error acquired a vested right of property, of which he could not, under the Fourteenth Amendment of the Constitution, be deprived by subsequent legislation. We do not perceive that Gross was, by that act, deprived of any substantial right of property. If, as held by the court below, in this case, the title to the real estate did not pass from Lombard at the date and by virtue of his mortgage, and if, because of its invalidity under the laws and public policy of the State, he was at liberty to convey a complete title to the insurance company, we have seen that the latter took the title subject to the mortgage, and, in addition, expressly assumed to pay the amount of the debt due from Lombard to the mortgage company. Apart from the supposed inability of the mortgage company, resulting from the statutes and public policy of the State, to take title by mortgage to the premises, Lombard was personally liable to it for the money he had borrowed. He could not have escaped that personal liability upon the ground that the mortgage, in so far as it gave a lien upon the property, was invalid. The claim of the company against him for the money he obtained

from it was separable from, and wholly independent of, any lien upon the premises. And, as between Lombard and the insurance company, that personal liability of the former for the mortgage debt was protected by the very terms of the conveyance to the latter. If the acceptance of title, subject to the mortgage, did not, because of its invalidity, give a lien upon the premises, it is clear that Lombard, as against the insurance company, had, upon recognized principles of equity, a vendor's lien for so much of the purchase money as was equal to or was represented by the debt due from him to the mortgage company. Of the existence of that liability upon the part of Lombard, and of the agreement by the insurance company to protect him against it, Gross had notice from the deed of trust. He claims under the insurance company, and can assert no right inconsistent with its obligation to meet, as part of the purchase money, Lombard's debt to the mortgage company. Without the act of 1875, a court of equity, in enforcing a lien for the note held by Gross, could not have ignored the equitable lien which, as vendor, Lombard had for his protection against the mortgage debt, subject to which, as we have seen, he passed the title to the insurance company. The entire argument in behalf of Gross proceeds upon the erroneous ground that when he purchased the note in question there was no lien upon the property in favor of any one for any amount whatever, except that given by the deed of trust to secure the note for $12,273. The effect, then, of the act of 1875 was not to deprive Gross of any superior exclusive lien upon the premises. It only enabled the mortgage company to enforce the lien attempted to be given by the mortgage of 1872, rather than leave the property subject to a lien for a like amount in favor of Lombard, from whom the insurance company, under which Gross claims, purchased. This view, without presenting others leading to the same result, indicates that the act of 1875 was not inconsistent with that clause of the Constitution of the United States which inhibits a State from depriving any person of property without due process of law.

*The federal question having been correctly determined, the decree is affirmed.*