In re BUFFALO, N. Y. & E. R. CO.

(Supreme Court, Special Term, Erie County.)

CORPORATIONS—VOTING STOCK IN OTHER CORPORATIONS.
    Laws 1892, c. 688, § 40, declaring that any stock corporation may purchase and hold stock in another corporation engaged in a similar business, and that a corporation holding such stock shall possess all the rights and privileges of an individual holder, ratifies a prior acquisition of stock by a corporation while a statute existed declaring such acquisition unlawful, and authorizes its voting such stock.

In the matter of the election of directors of the Buffalo, New York & Erie Railroad Company. The United States Trust Company of New York moves for an order compelling William B. Hoyt and others, inspectors of an election of such directors held at Buffalo, September 17, 1895, to receive and count the vote and ballot of such trust company at such election. Granted.

Adelbert Moot and George F. Brownell, for petitioner, United States Trust Co.
    E. G. Perkins, for respondents.

GREEN, J. From 1883 to 1895 there was no election of directors of the Buffalo, New York & Erie Railroad Company. In 1895 a notice was duly published of a meeting of stockholders to elect such directors. This notice bears date August 27, 1895, and appoints a stockholders' meeting September 17, 1895. At the time and place stated, George F. Brownell, as attorney and agent of the United States Trust Company of New York, presented the proxy thereof, duly executed, and offered his vote upon 5,759 shares of the capital stock of said Buffalo, New York & Erie Railroad Company. This vote was first offered upon various propositions that came before the meeting before the polls were declared open for the election of directors, but it was refused in each instance by the inspectors acting at the meeting. The ground of challenge was that the stock which Mr. Brownell offered to vote upon was the property of the New York, Lake Erie & Western Railroad Company. Mr. Brownell then produced the books of the Buffalo, New York & Erie Railroad, and showed therefrom that the stock upon which he offered to vote had been held by said United States Trust Company

of New York for more than 10 days preceding the election; and he also proved by affidavit, as required by law, that said trustee was the owner of said stock, as trustee for the railroad company. In addition to this he produced an instrument duly executed by the New York, Lake Erie & Western Railroad Company and its receivers, and filed a duplicate copy thereof with the inspectors, by which instrument it appears that the New York, Lake Erie & Western Railroad Company acknowledges the right of said United States Trust Company of New York to vote at said election upon said shares of stock. The duplicate copy filed with the inspectors did not contain the signature of one receiver, but this is not important, because the other original does contain the signatures of all the receivers, although the signature of Mr. McCullough was inadvertently omitted from the copy filed. The inspectors still refused to receive the vote upon such stock, and these proceedings were instituted.

The respondents make answer herein, alleging that they were justified in refusing the vote upon the stock in question, as that stock was the subject of litigation in an action in this court wherein Samuel W. Milbank and others were plaintiffs, and the New York, Lake Erie & Western Railroad Company and others were defendants, and that a judgment was rendered therein in October, 1882 (64 How. Prac. 20), among other things, enjoining and restraining the said last-named railroad company and its trustees and agents from voting upon those identical shares of stock, upon the ground that it was against public policy, and that, whether the railroad company or its trustee now holds the stock, that judgment is still in force, and precludes either from voting upon those shares. If that prohibition is still in force, it is binding as well upon this petitioner, the trust company, as upon the railroad company.

It is not, and cannot be, denied that the legislature possesses the power to validate, ratify, and confirm the purchase of stock in question, and to confer upon the purchaser all the rights, privileges, and powers of an individual owner of stock. It will suffice to refer to the following, among numerous authorities upon this proposition: Gross v. Mortgage Co., 108 U. S. 487, 2 Sup. Ct. 940; Id., 93 Ill. 493; 1 Mor. Priv. Corp. § 20; 2 Mor. Priv. Corp. § 651. The question for determination is whether the legislature has exercised such power. The answer to this depends upon the construction, operation, and effect to be given to chapter 688, § 40, Laws 1892. By that act, "any stock corporation may purchase, acquire, hold and dispose of the stocks, bonds, etc., of any corporation, if the corporation whose stock is so purchased, acquired, held, or disposed of, is engaged in business similar to that of such stock corporation. When any such corporation shall be a stockholder in any other corporation, as herein provided, its president or other officers shall be eligible to the office of director of such corporation the same as of they were individual stockholders therein, and the corporation holding such stock shall possess and exercise in respect thereof, all the rights, powers and privileges of individual owners or holders of such stock." It is claimed that this provision must

be construed to apply only to purchase of stock thereafter to be made, and not to stock theretofore acquired. The ground of the decision in the Milbank Case, 64 How. Prac. 20, was, not that the purchase of the stock was expressly prohibited by any statute applicable to the Erie Company, and therefore an illegal or unlawful transaction, but that it was not necessary to the exercise of its powers, and was therefore ultra vires; that although the purchase was beyond, or not within, its corporate power, yet its title to the stock, and its right to receive the profits and dividends, could not be questioned,—at least, by the vendor corporation. But it was also held that the vendor corporation could properly invoke the doctrine of ultra vires, as against its claim to vote upon the stock, or to have any voice in the control or management of the corporation, and thus deny to it all the rights, powers, and privileges of an individual stockholder. And it was also observed by the court that as the New York, Lake Erie & Western Company was organized under chapter 140, Laws 1850, it is now bound by section 8 of that statute, prohibiting purchases of stock in other corporations. That being so, I am unable to perceive why this purchase of stock, although it was not taken directly from the Buffalo, New York & Erie Company, but was purchased on the foreclosure sale of the Erie's property, was not within this express prohibition of the statute making it unlawful for any such company to use any of its funds in the purchase of any stock in other corporations. The company was prohibited from using its funds in this manner, and this prohibition would extend to a purchase on a judicial sale of the property of a stockholder, be he an individual or a corporation. Surely, in view of this prohibition, it could not be maintained that a purchase from a stockholder, and not from the company itself, would be legal. Still, it seems clear that, the vendor corporation having transferred the stock or property, it could not question the vendee's right to hold it, even though it might defeat an action to enforce the contract to pay dividends. However that may be, and whether the stock was purchased in violation of an express prohibition of the statute, or was simply a transaction in excess of corporate powers, the result is the same. The contract being executed by the transfer of the stock, it would not be revoked or annulled, and the stock be recovered, though the right to vote upon it did not pass. Judge Haight based his decision upon the general statute prohibiting corporations from exercising any corporate powers not necessary to the powers enumerated, and held that the purchase was ultra vires. This provision is merely declaratory of the common law. The right to vote on the stock was denied on grounds of public policy. For the reasons stated, I think that the decision could also have been properly placed on the ground that the purchase of the stock on the foreclosure was in violation of the act of 1850, c. 140, § 8, under which the New York, Lake Erie & Western Company was organized, and consequently it could not be allowed the privilege to vote.

Let us assume, then, that this company's charter (act of 1850) applied to the purchase of this very stock, and declared it unlawful. Now, this statute was repealed in 1892, while this company was

still the owner and holder of this stock, and consequently there remained no express statutory prohibition against the use of its funds in the purchase of stock of other corporations. And not only was such prohibition repealed, but an affirmative statute was enacted, authorizing any stock corporation to hold such stock, and conferring all the rights, powers, and privileges of an individual stockholder. From that time it became lawful to hold such stock, and to vote upon it. The act of purchase became ratified, confirmed, and validated, and the disability to hold such stock was removed. The rule against construing a statute to operate retroactively has no application. The legal, absolute, indisputable right and power to hold such stock in the future is given by the act of 1892. At the instant of time when the statute was passed, the holding became legalized, although it was purchased in violation of a former statute, and all the rights, powers, and privileges of a stockholder became vested in the company. The prohibitory statute being repealed, and a new, affirmative, enabling, remedial statute being enacted, it necessarily operated on the condition of things existing at that time. There is now no statute prohibiting the company from holding this stock, with all the rights and powers incident to or connected with it. If the holding of this stock is sanctioned, and the disability of the company to be and exercise all the powers and privileges of a stockholder are removed, it must follow, as the night the day, that the purchase or acquisition of it is also ratified and confirmed. "A statute is not retrospective, in the sense under consideration, because a part of the requisites for its action is drawn from a time antecedent to its passing." See End. Interp. St. §§ 280, 281. In view of the repeal of the prohibitory statute, and this enabling act, how can it be maintained that there is any principle of public policy against this company exercising the rights of a stockholder? The public policy of the state was indicated by the act of 1892, as it was indicated by the act repealed. It would be presumptuous in the court to say that it is contrary to public policy for a corporation now to hold stock previously purchased, and to be a stockholder in another corporation. The statutes of the state are conclusive upon the courts as to questions of public policy. Since the statute is repealed, what law now governs the holding of the stock? Where is now the law preventing this company from being a stockholder in respect to this stock? Why should the court draw a distinction between stock acquired and held previous to the statute, and that acquired after, when the statute makes none? Is there any foundation in reason or principle for such a distinction? Is there any judicial reason for holding that one corporation may not be a stockholder in another, in respect to stock theretofore acquired? If such a distinction should be made upon any supposed ground of public policy, it was for the legislature to make it. When the legislature has reversed its public policy, and declared an inconsistent one, the judiciary must follow and obey. The question is, not as to the particular time of acquisition of the stock, but whether or not there now exists any statute, rule of law, or principle of public policy that forbids one cor-

poration from being, and exercising all the rights of, a stockholder in another? There is none. Upon what rule or principle of law, therefore, is this company to be deprived of exercising the rights of a stockholder? Not upon the doctrine of ultra vires, surely; for the legislature has conferred the power to be a stockholder, with all the rights thereto annexed, and there is no restriction in respect to stock theretofore acquired. The right to hold stock in other companies is declared. And, pray, what is "public policy"? It is that principle of the law which holds that no one can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be termed the policy of the law, or public policy, in relation to the administration of the law. But "it is a very unruly horse, and, when once you get astride of it, you never know where it will carry you." It is a variable quantity.

Now, the question comes down to this: Could the right to hold this stock and exercise the rights of a stockholder be questioned in any action or proceeding by the people of the state? If not, then no one may dispute it. Upon what grounds? Public policy or ultra vires, or both? The former is out of this question, for the policy of the law is determined by the statute. As to the latter, it would be a legal anomaly to adjudge that the holding of stock previously acquired is ultra vires, but otherwise as to stock subsequently purchased; in other words, that upon the repeal of the act of 1850, prohibiting the purchase, and making it unlawful, the holding of the stock is now to be governed by the general provision of the Revised Statutes (now embodied in the general corporation law) declaring that no corporation shall possess or exercise any corporate powers not expressly given by law, or not necessary to the exercise of the powers so given. Chapter 687, § 10. Now, the power to hold stock is expressly given. And in Oelbermann v. New York & N. R. Co., 7 Misc. Rep. 353, 27 N. Y. Supp. 945, it was held that no one but the state, or stockholders of the purchasing corporation, could question the corporate power of the company to be a stockholder, and so it is adjudged in other jurisdictions. The legislature may waive the public right to object to corporate acts because they are opposed to the public interests, and, where any act is invalid for want of legislative assent, may waive the objection and ratify such act by a subsequent statute. Richards v. Railroad Co., 44 N. H. 136.

Now, if there remains any doubt in respect to the applicability of the act of 1892 to the acquisition and holding of this stock, the law and justice require that in a summary proceeding of this character, to which the people of the state are not a party and cannot be heard, such doubt should be resolved in favor of the claimant. It is eminently proper, in view of this legislative declaration and authority, that the corporate power and right of the Lake Erie & Western Railroad Company to hold this stock, and to exercise all the rights, powers, and privileges of a stockholder, should be assumed until it is questioned by the sovereign power. When the lawmaking power authorizes a corporation to hold stock in another, and to exercise all the rights of a stockholder, it is unseemly in the inspectors of

election, and is improper for this court in such a proceeding, to undertake to decide summarily that the statute has no application to stock held at the time the statute was passed. Even though we may be wrong in our interpretation of the statute, still the company shows a prima facie right; and, whatever doubts may exist, they should not be resolved against it. The vendor corporation voluntarily parted with its stock, received the vendee's money in payment, and created it a stockholder, or attempted to do so. The disability of such corporation to purchase and hold stock in other companies having been removed, neither law, justice, nor equity requires that the right to vote upon stock theretofore acquired should be denied.

If the consequence of construing this statute to apply to stock theretofore purchased should result in destroying, affecting, or impairing any legal right possessed by the vendor corporation or its minority stockholders, there would exist very good reasons for refusing to give a retroactive operation to its provisions. Where no such legal rights will be impaired, the presumption against a legislative intention to affect matters and things theretofore arising or occurring is of much less potency. End. Interp. St. § 284. And especially so where the statute is a curative, remedial, or enabling enactment. The rule is not inexorable, but it is largely a question of intention; depending upon the nature or character of the provisions, and the object and purposes sought to be attained. See Cayuga Indians v. State, 99 N. Y. 235, 1 N. E. 770. Now, what legal right in the corporation or in its stockholders will be affected? Judge Haight held that the right of the company to hold this stock, as property purchased and paid for by it, could not be questioned by the vendor corporation, the contract of transfer having been consummated and executed, but still it had no corporate power to vote upon it. It ought to be assumed, however, that the parties intended to create the company a stockholder, notwithstanding the statutory prohibition. That was the purpose and effect of the transfer. If it be conceded that the statute validates the holding of this stock, must it not also follow that the company may vote upon it? Is it a warrantable construction that, although the holding of the stock is legalized, yet the other provisions conferring all the rights, powers, and privileges of a stockholder ought not to be applied to it, so as to give the right to vote in the future? May we draw a distinction between the two clauses? In respect to the supposed right of the vendor corporation or its stockholders, it is an important observation to make that, even though it may be assumed that it was not the intention to give the right to vote, yet it was one of the contingencies to which the parties must have looked, in making a contract or transfer of this character, that it may be affected in many ways by subsequent legislation. Of course, that begs the question whether it was the legislative intention to confer all the rights and powers of a stockholder, as well as to authorize the holding of the stock. We think that is the effect of the language of the statute authorizing such corporations to hold stock in other corporations, etc., and repealing the statute that prohibits them from doing so. This corporation has held this stock

for many years, and yet, we infer, no application has been made by the Buffalo, New York & Erie Company, or any of its stockholders, to the attorney general, for the institution of quo warranto proceedings against the New York, Lake Erie & Western Company on account of the exercise of this illegal power. Nor, it seems, has this act of purchase ever been questioned by the state, or by the stockholders of the latter company. If, as we believe, the legislature has legalized the holding of this stock, and declared that such corporations may hold stock in other railroad corporations, it is difficult to hold that the other consequences do not follow. The right to hold stock, and to exercise the rights and powers of a stockholder, is peculiarly a public question, and particularly concerns the state itself, since it is a matter that relates to the exercise of corporate powers or franchises.

It follows that the inspectors should have received the vote of the trust company, and an order directing them to proceed with such election, and to receive the vote of the trust company upon the 5,759 shares of stock in question, may be entered, with costs to the petitioner.