ADAMS COUNTY *v.* BURLINGTON & MISSOURI RAILROAD CO.

IN .ERROR TO THE SUPREME COURT OF IOWA.

Argued October 22, 1884.—Decided November 3, 1884.

When a record shows that two questions are presented by the pleadings, one Federal and one non-Federal, and that the judgment below rested upon a decision of the non-Federal question, this court has no jurisdiction to review that judgment.

Suit in equity. The facts which make the case are stated in the opinion of the court.

*Mr. George G. Wright* and *Mr. F. M. Davis* argued for plaintiff in error.

*Mr. T. M. Stuart,* *Mr. Samuel Shellabarger* and *Mr. J. M. Wilson,* for defendants in error, submitted on their briefs.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court. This is a suit in equity brought by Adams County, Iowa, the plaintiff in error, on the 23d of December, 1869, against the Burlington and Missouri River Railroad Company, in a State court of Iowa, to quiet its title to sixty-six forty-acre lots of land. The county asserts title under the swamp-land act of September 28, 1850, 9 Stat. 519, ch. 84, and the railroad company under the Iowa land-grant act of May 15, 1856, 11 Stat. 9, ch. 28. The company, in its answer, denied the title of the county, on the ground that the lands were not swamp lands within the meaning of the swamp-land act, and took issue on every material averment of fact in the bill to support a title under that act. It then set up its own title under the land-grant act.

The petition averred a selection of the lands in dispute, as

swamp lands, by Walter Trippett, county surveyor of the
county, under the authority of the Secretary of the Interior
and Commissioner of the General Land Office, as well as the
Governor and Legislature of Iowa, and the report thereof, in
due form, to the Commissioner of the General Land Office, on
the 30th of September, 1854.  On account of this selection
and report, it was claimed that the right of the State to a
patent for the lands selected was perfected by the act of March
3, 1857, ch. 117, 11 Stat. 251.  The railroad company filed
an answer in the nature of a cross-bill asking for affirmative
relief on the following facts :

" Petitioner further states that on the 25th day of October,
1861, the claim or right of said plaintiff to said lands under
and by virtue of said pretended selection of said Trippett was
submitted to the Commissioner of the General Land Office for
final adjudication, and defendant appeared before said Com-
missioner and resisted the claims of said plaintiff to said lands,
and asserted its rights thereto as lands granted to the State of
Iowa for railroad purposes, and said Commissioner, after full
and careful examination of plaintiff's claim, rejected the same
as fraudulent and unfounded, and afterwards, on the 25th of
October, 1862, said Commissioner certified and conveyed said
lands to the State of Iowa for railroad purposes, under and in
pursuance of act of Congress of date of May 15th, 1856, . . .
and that on the —— day of ———————— the said State certified
and conveyed the same to defendant in pursuance of the said
act of the Legislature of the said State of date of ——————,
1856. . . . Defendant here avers the fact to be that the said
plaintiff, well knowing that her claims to said lands were
fraudulent and unfounded, did, upon the said decision of the
said Commissioner against her, voluntarily abandon all claim,
right, or interest in said lands, and has, since the date of such
decision and up to the time of the commencement of this suit,
recognized and treated defendant as the owner of said lands ;
that the said County of Adams, since the 25th day of October,
1861, has, by numerous and repeated acts, not only abandoned
all claims to said lands, but has recognized, treated, and ac-
knowledged the same to belong to defendant ; that since the

date of said decision said county has regularly each year (up to and including the year 1871) listed and assessed said lands as the land of the defendant, and has, since the date aforesaid, regularly levied and collected taxes thereon from defendant.

"That the taxes thus levied and collected on said lands from defendant since the 25th day of October, 1861, would, with the legal interest thereon, amount to about ten thousand dollars. That prior to the 25th of October, 1861, the county had assumed to contract portions of said land to certain individuals under the pre-emption laws, and some of said pre-emptors had taken possession of said land and made valuable improvements thereon, but that plaintiff, after that date, ceased to take any further notice or control of said land, or attempt in any manner to fulfil their said agreement with said pre-emptors; and relying upon their title to said lands, and having every reason to believe, from the acts and conduct of the plaintiff, that she had acquiesced in the decision of said Commissioner, and abandoned all claim to said lands, defendant contracted with said pre-emptors, and with the knowledge of the plaintiff, and without any objections being made by said plaintiff, defendant sold and conveyed by warranty deed parcels of said land aforesaid, and defendant afterwards, and before the commencement of this suit, sold and conveyed by warranty deed these portions of said land to different persons, many of whom are now, and for the last six years have been, in the actual possession of the same, and have made valuable improvements thereon.

"That on the 17th day of June, 1869, the said plaintiff, for the purpose of inducing defendant to bring said lands into market, made and entered into a written contract, whereby she expressly recognized defendant's ownership of said lands, and agreed, in consideration of defendant's bringing said lands into market and selling the same to settlers, to remit a portion of the taxes that she had levied thereon, and defendant then and there paid to said county the sum of ten thousand dollars as taxes on certain lands, including the land in controversy."

The prayer was "that plaintiff's bill may be dismissed, and that defendant have and obtain a decree and judgment quieting their title to said lands, and for costs of this case;" and, if the

title of the defendant was not sustained, that there might be a judgment in favor of the defendant and against the county for the taxes that have been paid on the land.

Under these pleadings testimony was taken, and the cause heard in the court of original jurisdiction, where, on the 8th of May, 1878, a decree was rendered dismissing the plaintiff's bill, and "finding that the allegations of defendant's cross-bill are true, and that the defendant is entitled to the relief prayed for; that the lands in controversy . . . were duly certified to the defendant as land inuring to it, as alleged in the cross-bill; that the defendant became thereby the legal owner of said lands, as alleged in the cross-bill; and that plaintiff has, since 1862, recognized and treated said defendant as the owner of said land, as alleged in said cross-bill; and plaintiff is now, by such acts and conduct, estopped from claiming the same or denying the defendant's title thereto." Upon this finding the decree established the title of the company and quieted it as against the claim of the county.

From this decree an appeal was taken to the Supreme Court of the State, where, on the 24th of October, 1879, it was affirmed. Thereupon the county presented to the Chief Justice of the Supreme Court a petition for the allowance of a writ of error to this court. In this petition it was stated that "in the pleadings, record, judgment and decree . . . there was drawn in question the rights" of the county under the swamp-land act, and the act of March 3, 1857, as well as the construction of the acts making the railroad grant, and that the decision was against the right claimed by the county. In his certificate of the allowance of the writ the Chief Justice stated that he found from the record that the "facts stated in the petition are true."

The case was several times considered by the Supreme Court before the final judgment of affirmance was rendered, and the record contains four opinions, filed at different times in the course of the proceeding, from which it appears, in the most positive manner, that the decision of the cause in favor of the company was placed entirely on the ground of estoppel, as set up in the cross-bill. The original title of the county is nowhere, in any of the opinions, disputed or denied.

A motion is made to dismiss the writ to this court for want of jurisdiction, on the ground that no federal question is involved.

To give us jurisdiction of a writ of error for the review of the judgment of a State court, it must appear affirmatively, not only that a federal question was raised and presented for decision to the highest court of the State having jurisdiction, but that it was decided, or that its decision was necessary to the judgment that was rendered. The cases to this effect are numerous. *Murdock* v. *Memphis*, 20 Wall. 590, 636; *Chouteau* v. *Gibson*, 111 U. S. 200. This record shows that there were two questions presented by the pleadings, to wit:

1. Whether the county acquired a title in equity to the lands in dispute under the operation of the swamp-land act, supplemented as it was by the act of March 3, 1857; and,

2. Whether, if it did, it was estopped by its subsequent acts from setting up that title as against the railroad company.

It may be conceded that the first of these questions was federal in its character, but we are clearly of opinion the second was not. A consideration of no act of Congress was involved in its decision. There was nothing in the swamp-land grant to prevent the county from surrendering the property to the railroad company, if that was thought best. Under this defence the validity of the original title was not disputed. The claim was that, in legal effect, that title had been ceded to the railroad company, and that the county was in no condition to demand it back. There was no dispute about the federal right itself, but about the consequences of what had been done by the parties in respect to it, after the title had passed in equity from the United States to the county.

To our minds, for the purposes of the present question, the case is, in all respects, the same as it would be if the dispute had been about the effect of an instrument intended as a conveyance of the property from the county to the company. The controversy is not as to the right to convey, but as to the effect of what has been done to make a conveyance. That depends not on federal, but on State law.

It is contended, however, that inasmuch as the alleged com-

promise between the county and the company included, among other things, the claim of the county for taxes levied on the lands, the right to tax the lands before a patent was issued for them by the United States, must have been passed upon by the court below in the decision which was rendered. Clearly this is not necessarily so. The company claims nothing under the taxation. Its rights against the county do not depend on the validity of the taxes. The right to tax was one of the matters in dispute between the county and the company, and that was compromised with the rest. The effect of the compromise upon the title of the county would be the same whether the tax was properly levied or not. It follows, therefore, that the decision of the court below on this branch of the case did not involve the question of the validity of the title set up by the county under laws of the United States.

This brings us to the inquiry whether it appears sufficiently that the case was disposed of below on this defence. If it does, the motion to dismiss must be granted, and, having no jurisdiction, we cannot pass on the correctness of that decision.

The record discloses that this separate and distinct defence was made, and that it in no way depended on the validity or invalidity of the original title of the county. In our opinion it is clearly to be inferred from the decree of the court of original jurisdiction, which was affirmed in the Supreme Court, that the decision in favor of the company was placed entirely on that ground. So far as the original bill of the county is concerned, the decree finds in favor of the company and dismisses the bill. Then, as to the cross-bill, it finds the legal title to be in the company, and that the county is estopped from claiming the lands or denying the company's title thereto. This, of itself, implies that there was, in fact, no decision against any right, title, privilege or immunity claimed under the Constitution or laws of the United States, and that the decree rested alone on the defence of estoppel, which was broad enough to control the rights of the parties without disposing of the federal question which it was attempted to raise. In other words, it was adjudged by the State court that the title of the company must prevail in this suit because the county was precluded by its

conduct from insisting to the contrary. But if we look to the opinions, which, under the laws of Iowa, must be filed before a judgment is rendered, and which, when such is the law, may certainly be looked at to aid in construing doubtful expressions in a decree, it is shown unmistakably that the decision was put on that ground alone. *Gross* v. *U. S. Mortgage Co.*, 108 U. S. 486–7.

In the petition which was presented to the chief justice of the court for the allowance of a writ of error, it was stated "that in the pleadings, record, and judgment and decree there were drawn in question" the rights of the county under the swamp-land acts, as well as the construction of the land-grant acts, and that the judgment was against these rights. The chief justice, in his allowance of the writ, certified that he found the statements in the petition to be true, but, if this certificate is to have any effect at all upon this question, it certainly cannot be taken as conclusive when the same chief justice in an opinion on file in the case places the decision entirely on the ground of estoppel.

It follows that we have no jurisdiction, and

*The motion to dismiss is granted.*