## PHILADELPHIA FIRE ASSOCIATION v. NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

Argued October 26, 1886. — Decided November 15, 1886.

A Pennsylvania fire insurance corporation began doing business in New York in 1872, and continued it afterwards till 1882, receiving from year to year certificates of authority from the proper officer, under a statute of New York passed in 1853. Chapter 694 of the laws of New York, of 1865 as amended by c. 60 of the laws of 1875, provided that whenever the laws of any other State should require from a New York fire insurance company a greater license fee than the laws of New York should then require from the fire insurance companies of such other State, all such companies of such other State should pay in New York a license fee equal to that imposed by such other State on New York companies. In 1873, Pennsylvania passed a law requiring from every insurance company of another State, as a prerequisite to a certificate of authority, a yearly tax of 3 per cent. on the premiums received by it in Pennsylvania during the preceding year. In 1882, the insurance officer of New York required the Pennsylvania corporation to pay, as a license fee, a tax of 3 per cent. on the premiums received by it in New York in 1881. In a suit against such corporation, in a court of New York, to recover such tax, it was set up as a defence, that the tax was unlawful, because the corporation was a "person" within the "jurisdiction" of New York, and "the equal protection of the laws" had been denied to it, in violation of a clause in the Fourteenth Amendment to the Constitution of the United States. On a writ of error to review the judgment of the highest court of New York, overruling such defence: Held, that such clause had no application, because, the defendant, being a foreign corporation, was not within the jurisdiction of New York, until admitted by the State on a compliance with the condition of admission imposed, namely, the payment of the tax required as a license fee.

The business carried on by the corporation in New York was not a transaction of commerce.

The opinion of the highest court of New York, duly authenticated by the proper officer, and transmitted to this court with the record, in compliance with the 8th Rule, was examined to aid in determining whether that court decided such Federal question against the defendant.

This was a writ of error to the Supreme Court of the State of New York. Under the provisions of § 1279 of the Code of Civil Procedure of New York, the People of the State of New York and the Fire Association of Philadelphia, a Pennsyl-

vania corporation, being parties to a question in difference which might be the subject of an action, agreed upon a case containing a statement of the facts on which the controversy depended, and presented a written submission of it to the Supreme Court of New York, so that the controversy became an action. The material facts set forth in the case were these :

" The defendant, The Fire Association of Philadelphia, is a corporation created and organized in the year 1820, by and under the laws of the State of Pennsylvania, for the transaction of the business of fire insurance, and having its principal place of business in the City of Philadelphia. In the year 1872 it established an agency in the State of New York, which it has ever since maintained. No question is here raised but that it has uniformly complied with all the requirements and conditions imposed by the laws of this State upon fire insurance companies from other States establishing and maintaining agencies in this State, except the payment of the tax now in dispute, upon premiums received by it in 1881 upon risks located wthin the State of New York, and which is the subject of this controversy, and has received from year to year certificates of authority from the Superintendent of the Insurance Department of this State, as provided to be issued under the Act, c. 466 of the laws of 1853, and the subsequent Acts amendatory thereof.

" The Act of the People of the State of New York, passed May 11, 1865, three fifths being present, being c. 694 of the laws of 1865, entitled ' An Act in relation to the deposits required to be made, and the taxes, fines, fees, and other charges payable by insurance companies of sister States,' as amended by the Act of 1875, c. 60, provides as follows, viz. : ' Whenever the existing or future laws of any other State of the United States shall require of insurance companies, incorporated by or organized under the laws of this State, and having agencies in such other States, or of the agents thereof, any deposit of securities in such State for the protection of policy-holders or otherwise, or any payment for taxes, fines, penalties, certificates of authority, license fees,

or otherwise, greater than the amount required for such pur-
poses from similar companies of other States by the then
existing laws of this State, then, and in every such case, all
companies of such States establishing, or having heretofore
established, an agency or agencies in the State, shall be and
are hereby required to make the same deposit for a like pur-
pose in the Insurance Department of the State, and to pay the
Superintendent of said Department for taxes, fines, penalties,
certificates of authority, license fees, and otherwise, an amount
equal to the amount of such charges and payments imposed
by the laws of such State upon the companies of this State
and the agents thereof ; and the Superintendent of the Insur-
ance Department is hereby authorized to remit any of the fees
and charges which he is required to collect by existing laws,
except such as he is required to collect under and by virtue of
this Act, provided, however, that no discrimination shall be
made in favor of one company over any other from the same
State.'

"The State of Pennsylvania, by an Act passed April 4, 1873,
and ever since in force, enacted as follows, viz.: 'Section 10.
No person shall act as agent or solicitor in this state of any
insurance company of another state, or foreign government,
in any manner whatever relating to risks, until the provisions
of this Act have been complied with on the part of the
company or association, and there has been granted to said
company or association, by the commissioner, a certificate of
authority, showing that the company or association is
authorized to transact business in this state ; and it shall be
the duty of every such company or association, authorized
to transact business in this state, to make report to the
commissioner in the month of January of each year, under
oath of the president or secretary thereof, showing the entire
amount of premiums of every character and description
received by said company or association in this state, during
the year or fraction of a year ending with the thirty-first
day of December preceding, whether said premiums were
received in money or in the form of notes, credits or any
other substitute for money, and pay into the state treasury a

tax of three per centum upon said premiums; and the commissioner shall not have power to grant. a renewal of the certificate of said company or association until the tax aforesaid is paid into the state treasury."

"In the year 1881 the defendant, through its authorized agents in the State of New York, received for insurance against loss or injury by fire, upon property located within the State of New York, premiums to the aggregate amount of $196,170.22. The Superintendent of the Insurance Department of New York claimed that the defendant ought to pay, as a tax, for the year 1881, $1848.45, with proper interest, being the amount arrived at by deducting from $5885.10, (which would be a tax of three per cent. on $196,170.22,) the sum of $4036.65, which the defendant, as a Pennsylvania corporation, had paid as a tax on premiums, during 1881, under laws of New York in force in 1881, other than the Act of 1865, as amended by the Act of 1875. The case then states, that 'the controversy between the parties is, as to whether the defendant is liable to. pay any tax to the Superintendent of the Insurance Department of the State, upon the said premiums received by it in the year 1881, and, if any, what amount;' that 'the defendant claims that it is not liable to the plaintiffs for any amount, insisting, first, that the said Act of 1865, as amended by the Act of 1875, is unconstitutional and void, and not a legitimate exercise of legislative power,' and making further claims as to the amount due from it if the Act in question. is. valid; that 'the question submitted to the court for decision upon the foregoing statement of facts is, whether the defendant is. liable to pay to the plaintiffs, or to the superintendent, the whole, or any, and, if any, what part of the' $1848.45; and that judgment is to be entered according to its decision."

The agreed case having been heard by the Supreme Court in general term, as required by law, it rendered a judgment to the effect that the defendant was not liable to pay any part of such amount claimed by the superintendent. Two of the three judges holding the court concurred in that judg-

ment. The third dissented. The opinions of the majority and minority accompany the record. The majority held that the statutes of New York in question were void because in conflict with the Constitution of New York, and did not discuss any question arising under the Constitution of the United States. The dissenting judge differed with the majority as to the question adjudged by them, and further said: "Nor can I agree with the claim that this statute is contrary to the Fourteenth Amendment to the Constitution of the United States."

The plaintiffs having appealed to the Court of Appeals of New York, that court reversed the judgment of the Supreme Court, and rendered judgment for the plaintiffs for $1848.45, with interest and costs, and remitted the record to the Supreme Court, where a judgment to that effect was entered, to review which the defendant brought a writ of error. The Court of Appeals, in its decision, 92 N. Y. 311, after overruling the view taken by the majority of the judges of the Supreme Court as to the validity of the statute under the Constitution of New York, proceeded to consider its constitutionality under that clause of the Fourteenth Amendment to the Federal Constitution which commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." It held that that clause had no application to the rights of the defendant, because, being a foreign corporation, it was not within the jurisdiction of New York, until it was admitted by the State, upon a compliance with the conditions of admission which the State imposed, and had the right to impose.

*Mr. Joseph H. Choate*, for plaintiff in error, cited: *Santa Clara County* v. *Southern Pacific Railroad*, 118 U. S. 394, 396; *San Mateo County* v. *Southern Pacific Railroad*, 13 Fed. Rep. 722; *County of Santa Clara* v. *Southern Pacific Railroad*, 18 Fed. Rep. 385, 397–404; *Kentucky Railroad Tax Cases*, 115 U. S. 321; *Barbier* v. *Connolly*, 113 U. S. 27; *Soon Hing* v. *Crowley*, 113 U. S. 703; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Lafayette Ins. Co.* v. *French*, 18 How. 404;

*Ex parte Schollenberger*, 96 U. S. 369; *Railroad Co.* v. *Koontz*, 104 U. S. 5, 10–13; *St. Clair* v. *Cox*, 106 U. S. 350; *Ex parte Siebold*, 100 U. S. 371, 376; *Boyd* v. *United States*, 116 U. S. 616, 635; *Missouri* v. *Lewis*, 101 U. S. 22, 31; *Pearson* v. *Portland*, 69 Maine, 278; *Portland* v. *Bangor*, 65 Maine, 120; *Northwestern Fertilizer Co.* v. *Hyde Park*, 3 Bissell, 480; *Strauder* v. *West Virginia*, 100 U. S. 303, 311; *Bureau Co.* v. *Chicago, Burlington, & Quincy Railroad*, 44 Ill. 229; *Allhands* v. *People*, 82 Ill. 234; *Hughes* v. *Cairo*, 92 Ill. 339; *State Railroad Tax Cases*, 92 U. S. 575; *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512, 523; *Lexington* v. *McQuillan*, 9 Dana, 513; *S. C.* 35 Am. Dec. 159; *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; *Ins. Co.* v. *Morse*, 20 Wall. 445; *Ducat* v. *Chicago*, 10 Wall. 410.

*Mr. Denis O'Brien, Attorney General of New York,* for defendant in error, cited; *Elmwood* v. *Marcy*, 92 U. S. 289; *Fairfield* v. *Gallatin County*, 100 U. S. 47; *Post* v. *Supervisors*, 105 U. S. 667; *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Paul* v. *Virginia*, 8 Wall. 168; *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566; *Cooper M'fg Co.* v. *Ferguson*, 113 U. S. 727; *Nathan* v. *Louisiana*, 8 How. 73; *Morse* v. *Home Ins. Co.*, 30 Wis. 496; *S. C.* in error, 20 Wall. 445; *Drake* v. *Doyle*, 40 Wis. 175; *Continental Co.* v. *Doyle*, 40 Wis. 220; *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; *Runyan* v. *Coster*, 14 Pet. 122; *Covington Draw Bridge Co.* v. *Shepherd*, 20 How. 233; *Railroad Co.* v. *Koontz*, 104 U. S. 5; *McCullough* v. *Maryland*, 4 Wheat. 316, 430; *State Tax on Foreign Held Bonds*, 15 Wall. 300; *Ex parte Kinney*, 3 Hughes, 9; *Missouri* v. *Lewis*, 101 U. S. 22, 31; *Kentucky Railroad Tax Cases*, 115 U. S. 321, 337.

Mr. Justice Blatchford, after stating the case as above reported, delivered the opinion of the court.

The defendant claims here the benefit of the Fourteenth Amendment, and a question has occurred as to whether the record presents that point for our review. There being no pleadings, the obvious place to look for the claim would be the

agreed statement of facts. But all that is there said is, that the defendant insists that the statute is "unconstitutional and void and not a legitimate exercise of legislative power." The question was considered, in both the Supreme Court and the Court of Appeals, as to the validity of the statute, under the Constitution of New York, as being a law made to depend for its operation on the legislation of a foreign state, and thus an illegitimate exercise of legislative power. This contention is fairly within the words of the agreed statement, and, if it depended wholly on that statement to determine whether the record raises a Federal question, some doubt might exist. But in view of what was said in *Murdock* v. *Memphis*, 20 Wall. 590, 633, in *Gross* v. *United States Mortgage Co.*, 108 U. S. 477, and in *Adams County* v. *Burlington & Missouri Railroad Co.*, 112 U. S. 123, we think that we are at liberty to look into the opinion of the Court of Appeals, a copy of which, duly authenticated by the proper officer, is transmitted to us with the record, in compliance with our 8th Rule, for the purpose of aiding in determining what was decided by that court. From that opinion it appears that the court not only decided against the defendant all the questions other than Federal which were raised, including two under the Constitution of New York, but also decided against it the Federal question referred to. If the court had decided in its favor any one of the other questions which went to the whole cause of action, there would have been no necessity for considering the Federal question. But as it was, the decision of that question became necessary to the disposition of the case, and was fully considered, not *sua sponte*, but as a point presented by the defendant.

The provision of the Fourteenth Amendment, which went into effect in July, 1868, is, that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The first question which arises is, whether this corporation was a person within the jurisdiction of the State of New York, with reference to the subject of controversy and within the meaning of the Amendment.

The defendant, on the assumption that if it was within the jurisdiction of the State of New York, it was, though a foreign

corporation, "a person," and so entitled to the benefit of the Amendment, contends that it was within such jurisdiction. The argument is, that it established an agency within the State in 1872, which it had ever since maintained; that it complied, from year to year, with all the requirements and conditions imposed by the laws of the State on foreign fire insurance companies doing business in the State; that it received from year to year certificates of authority from the Superintendent of the Insurance Department, as provided by statute; that, under those circumstances, it was legally within the State and within its jurisdiction; that, being in the State, by permission of the State, continuously from 1872 to 1882, the State imposed on it, while there, in 1882, an unequal and unlawful burden; and that the New York Act of 1865 did not come into effect as to Pennsylvania corporations until the Pennsylvania Act of 1873 was passed, at which time the defendant had already been a year in the State.

But we are unable to take that view of the case. In *Paul v. Virginia*, 8 Wall. 168, at December Term, 1868, a statute of Virginia required that every insurance company not incorporated by Virginia should, as a condition of carrying on business in Virginia, deposit securities with the State treasurer, and afterwards obtain a license; and another statute made it a penal offence for a person to act in Virginia as agent for an insurance company not incorporated by Virginia, without such license. A person having acted as such agent without a license, and been convicted and fined under the statute, this Court held that there had been no violation of that clause of Article 4, § 2, of the Constitution of the United States which provides that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States;" nor any violation of the clause in Article 1, § 8, giving power to Congress "to regulate commerce with foreign nations and among the several States." The view announced was, that corporations are not citizens within the clause first cited, on the ground that the privileges and immunities secured to the citizens of each State in the several States, are those which are common to the citizens of the latter States,

under their Constitutions and laws, by virtue of their being citizens; and that, as a corporation created by a State is a mere creation of local law, even the recognition of its existence by other States, and the enforcement of its contracts made therein, depend purely on the comity of those States — a comity which is never extended where the existence of the corporation or the exercise of its powers is "prejudicial to their interests or repugnant to their policy." And the court, speaking by Mr. Justice Field, said: "Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely, they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." As to the power of Congress to regulate commerce among the several States, the court said, that while the power conferred included commerce carried on by corporations as well as that carried on by individuals, "issuing a policy of insurance is not a transaction of commerce." This decision only followed the principles laid down in the earlier cases of *Bank of Augusta* v. *Earle*, 13 Pet. 519, 588, and *Lafayette Ins. Co.* v. *French*, 18 How. 404.

The same rulings were followed in *Ducat* v. *Chicago*, 10 Wall. 410, where it was said that the power of a State to discriminate between her own corporations and those of other States desirous of transacting business within her jurisdiction being clearly established, it belonged to the State to determine as to the nature or degree of discrimination, "subject only to such limitations on her sovereignty as may be found in the fundamental law of the Union."

Other cases to the same effect are *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566; *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; and *Cooper M'fg Co.* v. *Ferguson*, 113 U. S. 727.

As early as 1853, the State of New York, by a statute, c. 466, required of every fire insurance company incorporated by any other State or any foreign government, as a prerequisite to doing business in the State, that it should file an appointment of an attorney on whom process was to be served, and a statement of its pecuniary condition, and procure from a designated public officer a certificate of authority stating that the company had complied with all the requisitions of the statute; and also required the renewal from year to year of the statement and evidence of investments; and provided that such public officer, on being satisfied that the capital of the company and its securities and investments remained secure, should furnish a renewal of the certificate of authority. A violation of the provisions was made a penal offence. This act, with immaterial amendments, is still in force.

This Pennsylvania corporation came into the State of New York to do business by the consent of the State, under this Act of 1853, with a license granted for a year, and has received such license annually, to run for a year. It is within the State for any given year under such license, and subject to the conditions prescribed by statute. The State, having the power to exclude entirely, has the power to change the conditions of admission at any time, for the future, and to impose as a condition the payment of a new tax, or a further tax, as a license fee. If it imposes such license fee as a prerequisite for the future, the foreign corporation, until it pays such license fee, is not admitted within the State or within its jurisdiction. It is outside, at the threshold, seeking admission, with consent not yet given. The Act of 1865 had been passed when the corporation first established an agency in the State. The amendment of 1875 changed the Act of 1865 only by giving to the superintendent the power of remitting the fees and charges required to be collected by then existing laws. Therefore, the corporation was at all times, after 1872, subject, as a prerequisite to its power to do business in New York, to the same license fee its own State might thereafter impose on New York companies doing business in Pennsylvania. By going into the State of New York in 1872, it assented to such prerequisite as

a condition of its admission within the jurisdiction of New York. It could not be of right within such jurisdiction, until it should receive the consent of the State to its entrance therein under the new provisions, and such consent could not be given until the tax, as a license fee for the future, should be paid.

It is not to be implied, from anything we have said, that the power of a State to exclude a foreign corporation from doing business within its limits is to be regarded as extending to an interference with the transaction of commerce between that State and other States by a corporation created by one of such other States.

*Judgment affirmed.*

MR. JUSTICE HARLAN dissenting.

Under the decision just rendered, the State of New York is permitted to subject a corporation of another State, within her limits by her consent, to higher taxes in respect to its business than is imposed there upon similar corporations of other States.

At the last term of this court, when counsel were about to enter upon the argument of the case of *Santa Clara County* v. *Southern Pacific Railroad*, 118 U. S. 394, 396 — involving the validity of a system devised by one of the States for the taxation of railroad corporations of a certain class — the Chief Justice observed: " The court does not wish to hear argument on the question whether the provision in the Fourteenth Amendment to the Constitution, which forbids a State to deny to any person within its jurisdiction the equal protection of the laws, applies to these corporations. We are all of opinion that it does." This, it is true, was said in regard to corporations of the particular State whose legislation was assailed as unconstitutional; but it is equally clear that a corporation of one State, doing business in another State by her consent, is to be deemed, at least *in respect to that business*, a " person " within the jurisdiction of the latter State, in the meaning of the Fourteenth Amendment.

The denial of the equal protection of the laws may occur in

various ways. It will most often occur in the enforcement of laws imposing taxes. An individual is denied the equal protection of the laws if his property is subjected by the State to higher taxation than is imposed upon like property of other individuals in the same community. So, a corporation is denied that protection when its property is subjected by the State, under whose laws it is organized, to more burdensome taxation than is imposed upon other domestic corporations of the same class. So, also, a corporation of one State, doing business, by its agents, in another State, by the latter's consent, is denied the equal protection of the laws if its business there is subjected to higher taxation than is imposed upon the business of like corporations from other States. These propositions seem to me to be indisputable. They are necessarily involved in the concession that corporations, like individuals, are entitled to the equal protection of the laws.

The plaintiff in error is a corporation of Pennsylvania. In 1872 it established and has ever since maintained an agency in the State of New York. It had its agents there when the taxes for 1881, here in question, were assessed.

The laws of New York prescribe certain conditions precedent to the right of a fire insurance company from another State to transact business there. It must possess a certain amount of actual capital; appoint an attorney in the State, service of process upon whom is to be "deemed a valid personal service upon the corporation" in any action "upon a policy or liability issued or contracted while such corporation transacted business" there; file in the insurance department a certified copy of its charter, together with a statement, verified by the oath of its chief officer and secretary, showing the name of the company, place where located, amount of its capital and assets, the extent to which its real estate is encumbered, the par and market value of all shares of stock held by it, the estimated value of its bonds, mortgages, and other securities, the extent of its indebtedness, the amount of its losses, adjusted and unpaid or incurred and in process of adjustment, the losses disputed, and the claims existing against it. It is also provided that no business shall be transacted in

the State by the agent of any company from another State, while its capital is impaired to the extent of twenty per cent. It further requires from such companies an annual statement, showing in detail the items making up their capital, and the deductions to be made therefrom. It was made the duty, first. of the State comptroller, and subsequently of the superintendent of insurance — these requirements of the statute being first complied with — to issue to the company, thus seeking admission into the State, a certificate showing its lawful right to transact business within her limits. Laws of N. Y., 1853, c. 466; Laws of 1862, c. 6, § 1, and c. 367, § 5; 1871, c. 888; Laws of 1874, c. 331, § 1; Laws of 1875, c. 555, § 1.

That the plaintiff in error conformed to these statutory provisions, and was admitted into New York for the transaction of business is shown by the agreed case, from which it appears that it "has uniformly complied with all the requirements and conditions imposed by the laws of this State upon fire insurance companies from other States establishing and maintaining agencies in this State, except the payment of the tax now in dispute upon premiums received by it in 1881 upon risks located within the State of New York, and which is the subject of this controversy, and has received from year to year *certificates of authority from the superintendent of the insurance department of this State, as provided to be issued under the act, c. 466 of the laws of* 1853, *and the subsequent acts amendatory thereof.*"

In view of these admitted facts, how can it be said that this Pennsylvania corporation was not, in respect to its corporate business, within the jurisdiction of New York during the year when the tax in dispute accrued? That a corporation of one State, doing business in another State by the latter's consent, evidenced by the official certificate given by her insurance department in conformity with her laws, and liable, precisely as domestic corporations are, to be brought into her courts, through service of process upon its duly appointed attorney or agent, in reference to any business transacted or liability incurred by it there, is to be deemed within the jurisdiction of that State, seems to me entirely clear. In *Ex parte Schollen-*

*berger*, 96 U. S. 369, 374, it was decided that a foreign insurance company, doing business in Pennsylvania, under the authority of a statute of that Commonwealth requiring, as a condition precedent to its being there, an agreement that judicial process served upon its agent should have the same effect as if served upon the corporation, was, within the meaning of the act of Congress of 1875, "found" in that State so as to give jurisdiction to the courts of the United States sitting in that State of suits brought there against such company, accompanied by service of process upon its agent. The subject was again considered in *St. Clair* v. *Cox*, 106 U. S. 350, 357, where it was said that there was no sound reason why, in the case of an insurance company doing business in another State, by an agent, under statutes such as those referred to, it should not be deemed to be represented in the latter by such agent, and held responsible for its obligations and liabilities there incurred.    See also *Railroad Co.* v. *Harris*, 12 Wall. 65; *Railway Co.* v. *Whitton*, 13 Wall. 270, 285.

It was said in argument that the plaintiff in error entered New York with the knowledge, derived from the act of 1865, that if Pennsylvania thereafter subjected New York insurance companies to higher taxes than the latter State imposed upon Pennsylvania corporations of the same class doing business in New York, the taxes levied upon it would be correspondingly increased; therefore, it is argued, the entrance of the plaintiff in error into New York was subject to the reserved right of that State thus to increase the taxes upon its business. The same idea is embodied in the suggestion that New York made it a prerequisite, from and after 1865, to the right of a fire insurance corporation of another State to transact business in New York, that it should pay such increased taxes, however much they might be in excess of the taxes imposed there upon corporations of the same class from the remaining States. Now, it is submitted: 1. That no such obligation was imposed by the statute upon the plaintiff in error as a prerequisite to its right to enter New York and transact business there. The agreed case shows not only that the insurance department of New York has certified its right to do business in that State,

but that the certificate was made as provided in the Act of 1853 and the acts amendatory thereof. Besides, there is no clause in the statute directing that department to withhold or to revoke a certificate upon the failure or refusal of the company to pay these increased taxes. The regularity and validity of that certificate was not questioned in argument, is not now disputed, and there is not a word in the statute to the effect that the *payment* of these increased taxes is a *prerequisite* to the right of the company to remain in the State and transact business. Indeed, it is evident that the State purposely avoided establishing any such prerequisite to the right to enter her limits. She only seeks, after admitting the plaintiff in error and certifying its right to do business, to subject it to the taxation in question. 2. The power of New York to impose this increased tax surely cannot depend upon the fact that she gave notice of what she would do in the contingency expressed in the Act of 1865. Such notice neither creates a power to do that which the State could not otherwise constitutionally do, nor makes it the duty of the plaintiff in error to submit to an illegal exaction. At last, the real question presented is, whether Pennsylvania corporations can be subjected to higher taxes in New York, than are imposed there upon corporations of the same class from other States.

It is said that a State may exclude altogether from its borders a corporation of another State, or may admit it upon such terms or conditions as she may elect to prescribe. It is quite true that general language to that effect was employed in *Paul v. Virginia*, 8 Wall. 168, where the only question necessary to be determined was as to the validity of a statute of Virginia, providing that before an insurance company, not incorporated by that State, should carry on business there, it must obtain a license therefor, and deposit with the State treasurer, as security for its engagements, bonds of a specified character and amount. In the course of the opinion which disposed of that question, it was said that a corporation of one State, "having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course,

that such assent may be granted upon such. terms and condi-
tions as those States may think proper to impose.   They may.
exclude the foreign corporation entirely; they may restrict its
business to particular localities, or they may exact such secu-
rity for the performance of its contracts with their citizens as
in their judgment will best promote the public interests.   The
whole matter rests in their discretion."   But, I submit that it
is the settled doctrine of this court, that the terms and condi-
tions so prescribed must not be repugnant to the Constitution
of the United States, or inconsistent with any right granted
or secured by that instrument.   In *Ducat* v. *Chicago*, 10 Wall.
410, 415, it was said by Mr. Justice Nelson, speaking for the
court, that, in respect to the nature or degree of discrimination
which a State may make between her own corporations and
those of other States, "it belongs to the State to determine,
subject only to such limitations on her sovereignty as may be
found in the fundamental law of the Union."   It was so de-
cided in *Insurance Co.* v. *Morse*, 20 Wall. 445, 455, 456, where
the question was as to the validity of a statute of Wisconsin
relating to the admission into that State of fire insurance com-
panies incorporated by other States.   Besides the condition
that they should designate some attorney in Wisconsin upon
whom process against the company could be served, it imposed
the further one that it should file in the proper office an agree-
ment stipulating that it would not remove to the courts of the
United States any suit brought against it in the local courts.
An insurance company of New York established an agency in
Wisconsin, and complied in all respects with these conditions;
it filed the required agreement.   In support of the validity of
those conditions, the State relied upon the very language
above quoted from *Paul* v. *Virginia*.   But the court was
careful to say that that language must be understood with
reference to the facts in the case and to the question to be
decided, which was stated to be simply "whether the State
might require a foreign insurance company to take a license
for the transaction of its business, giving security for the pay-
ment of its debts."   Care was taken to further announce, that
the general language employed in *Paul* v. *Virginia* was not in-

tended to impair the language in *La Fayette Ins. Co.* v. *French,* 18 How. 404, 407, where the court, speaking by Mr. Justice Curtis, said : " A corporation created by Indiana can transact business in Ohio only with the consent, express or implied, of the latter State. This consent may be accompanied by such conditions as Ohio may think fit to impose, and these conditions must be deemed valid and effectual by other States and by this court; *provided,* they are not repugnant to the Constitution and laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment of all others, or that principle of natural justice which forbids condemnation without opportunity for defence."      Upon these grounds it was held, in *Insurance Co.* v. *Morse,* that the Wisconsin statute, so far as it required insurance companies of other States to stipulate that they would not exercise the right to have suits against them removed to the national courts, was void, equally because it created an obstruction to the exercise of a privilege granted by the Constitution and laws of the United States, and tended to oust the courts of the Union of a jurisdiction conferred upon them.      Much that was said in that case is pertinent to the present one.      After observing that the courts would not enforce an agreement between a citizen of New York and a citizen of Wisconsin, that the former would, in no event, resort to the Federal courts sitting in Wisconsin for the protection of his rights of property, or an agreement between the same parties, upon whatever consideration, that the citizen of New York would in no case, when called into the courts, either of Wisconsin or of the Federal courts sitting in that State, demand a jury to determine his rights of property, but would submit such rights to arbitration or to the decision of a single judge, the court said : " We see no difference in principle between the cases supposed and the case before us.      Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford."      The court further said that the right of the insurance company to remove the suit was " denied to it by the State court on the ground that it had made the agreement re-

ferred to, and that the statute of the State authorized and required the making of the agreement. We are not able to distinguish this agreement and this requisition, on principle, from a similar one made in the case of an individual citizen of New York. A corporation has the same right to the protection of the laws as a natural citizen, and the same right to appeal to all the courts of the country. The rights of an individual are not superior, in this respect, to that of a corporation. The State of Wisconsin can regulate its own corporations and the affairs of its own citizens, in subordination, however, to the Constitution of the United States. The requirement of an agreement like this from their own corporations would be *brutum fulmen*, because they possess no such right under the Constitution of the United States. A foreign citizen, whether natural or corporate, in this respect possesses a right not pertaining to one of her own citizens. There must necessarily be a difference between the status of the two in this respect."

The only difference between *Insurance Co.* v. *Morse* and the present case is, that in the former the New York corporation expressly agreed, in writing, that it would not exercise its constitutional privilege of removing suits against it into the courts of the Union while the Pennsylvania corporation received an official certificate of its right to transact business in New York with notice derived from the act of 1865, that that State would after 1873—the date of the Pennsylvania statute—claim from it higher taxes than she imposed upon like corporations from the remaining States doing business in her limits by her consent. If the plaintiff in error, by merely maintaining its agencies in New York, is to be held to have impliedly agreed to submit to such increased taxation, is that anything more than an implied agreement that it would not assert a right secured to it by the Constitution of the United States? Can it be that a corporation is estopped to claim the benefit of the constitutional provision securing to it the equal protection of the laws simply because it voluntarily entered and remained in a State which has enacted a statute denying such protection to it and to like corporations from the same State? Is the right to that protection any less valuable or fundamental than the right to

remove a suit into the courts of the Union for trial? · Will it be held that an express agreement by a corporation not to exercise the latter right is void and not enforceable, but that a local statute denying the equal protection of the laws to a corporation will be upheld, simply because that corporation came within the jurisdiction of the State which assumed to make such denial, and received from her officers, acting in conformity with her laws, a certificate of its right to transact business there? Will effect be given in one case to what (erroneously, I think) is called an implied agreement to surrender a constitutional right, while an express agreement in the other to surrender a constitutional right is held to be invalid?

Even if it were conceded that a State, which provides for the organization, under her own laws, of corporations for the transaction of every kind of business, could arbitrarily exclude from her limits similar corporations from the remaining States, and declare all contracts made within her jurisdiction with corporations from other States, to be void—concessions to be made only for the purposes of this case—it would not follow that she could subject corporations of other States, doing business within her limits under a license from the proper department, to higher taxes than she imposes upon other corporations of the same class from the remaining States. The plaintiff in error having been in 1881 lawfully within New York, by its agents, cannot be denied there the equal protection of the laws because the State which created it may have adopted a system of taxation different from that devised by New York. The case, in its legal aspects, is precisely the same as if Pennsylvania had never passed the statute of 1873, but New York had, in that year, imposed upon fire insurance companies from Pennsylvania higher taxes than she imposed upon similar corporations from other States.

It would seem to be the result of the decision in this case, that New York may prescribe such varying rates of taxation upon insurance corporations of the remaining thirty-seven States, within her jurisdiction, as she chooses—the rate for corporations from each State differing from the rate established for corporations of the same class from all other States,

and the rate in respect to corporations of other States being higher than she imposes upon her own corporations of the same class. Such legislation would be a species of commercial warfare by one State against the others, and would be hostile to the whole spirit of the Constitution, particularly the Fourteenth Amendment, securing to all persons within the jurisdiction of the respective States the equal protection of the laws.

For the reasons which have been stated, I feel obliged to withhold my assent to the opinion and judgment of the court.