## MICHIGAN v. FLINT AND PÈRE MARQUETTE RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 913. Submitted January 29, 1894. — Decided March 12, 1894.

The decision of the highest court of a State, in a suit brought by the State to establish its title to lands within the State, claimed and occupied by a railroad company, that the State was estopped by its acts, conduct, silence, and acquiescence from setting up such claim, presents no Federal question for revision by this court.

MOTION to dismiss. This was a bill of information filed on behalf of the State of Michigan in the Ingham Circuit Court, December 13, 1887, against the Flint and Père Marquette Railroad Company and others, claiming title to certain lands under and by virtue of the grant by act of Congress of September 28, 1850, c. 84, commonly known as the swamp land grant. 9 Stat. 519.

The claims of the respective parties appear in the pleadings, which were in substance as follows:

The bill alleged that the grant transferred to the several States named, and among others the State of Michigan, the whole of the swamp and overflowed lands therein made unfit for cultivation and remaining unsold on the 20th of September, 1850, and that it was the duty of the Secretary of the Interior to make lists and plats of the land, and, at the request of the governor of the State, to issue patents; that the effect of the grant was to vest title in the State, and that the State afterwards asserted title to all the land, and that such title was recognized by the United States. It was further averred that on or about November 21, 1850, certain instructions were prepared relative to the designation and description of said swamp lands by the Commissioner of the General Land Office, of which a copy was sent to the surveyor-general and another copy to the governor, by which the surveyor-general was instructed to make out lists and to regard the field-notes on

file in his office as the basis thereof, if the State was willing to adopt them, and if not, and the State furnished him with satisfactory evidence that any lands were of the character embraced by the grant, to so report them; that the surveyor-general transmitted a copy of his instructions to the governor and desired information whether the state authorities would accept the field-notes or conclude to have a survey "to determine the boundaries of the swamp and overflowed lands."

It was further alleged that the governor suggested delay, and that on January 3, 1851, the surveyor-general gave his opinion that the field-notes would show a greater amount of swamp lands than an actual resurvey.

The bill then stated that the survey spoken of indicated the sections or subdivision of sections of government lands which were of a swampy character, and that pursuant to the propositions and suggestions aforesaid the legislature of Michigan passed an act, approved June 28, 1851, adopting the notes of the surveyor on file in the office of the surveyor-general, as the basis upon which the State accepted the lands, and that such legislation was well known to the Land Department in Washington, and understood to be the basis agreed upon for the adjustment of the lands granted by said grant.

That this proposition and these acceptances by the State "operated and had the legal effect to perfect in the State of Michigan full, complete, and absolute title to all the lands shown by the surveyor-general's minutes to be swamp and overflowed lands, and all subdivisions of land the greater part of which appeared by said minutes to be of a swampy nature."

It was further averred that the surveyor-general thereupon proceeded to prepare plats, and designate upon said plats the lands of a swampy nature and character which came within the grant; that the maps and plats are now on file in the office of the Michigan land commissioner, and are the identification of the swamp lands granted to the State of Michigan by the said act, and "which this informant submits are effective and binding both upon the United States and all persons claiming from them, as well as the State of Michigan;" that the action

of the State and the lists were reported to the General Land Office.

The bill then stated that the title of the State of Michigan having been perfected in this manner, afterwards Congress, by act of June 3, 1856, granted lands to Michigan to aid in the construction of certain railroads, and, among others, the Flint and Père Marquette Railroad, and that a large quantity of the lands selected by the railroad company were lands which were shown by the minutes of the surveyor-general to be swamp.

That the proposal by the Commissioner of the General Land Office as to the method of identification, the action taken thereon, and the selection of swamp lands, were with the approval of the Secretary of the Interior; that by reason thereof and sundry subsequent confirmatory acts of Congress the title of the State became complete; and that by the means particularly detailed in the bill these lands became diverted from the swamp land grant, and passed to the railroad company as railroad lands. The prayer was that the lands might be declared to be swamp lands, and that the railroad company had no right in them; that the title of the State be confirmed, and that the defendants be required to account for land and timber sold; and for an injunction to prevent further sales.

The answer denied that the State of Michigan had any power or control over the lands or any of them, and stated that defendant trustees held the title for the railroad company; that this title came from the United States through the State of Michigan by an act of the legislature of February 14, 1857, and sundry subsequent conveyances; denied that the effect of the grant was, as stated in the information, to vest title in the State prior to identification; and that the correspondence spoken of in the bill could have the effect to increase the rights of the State of Michigan beyond the terms of the act of Congress granting said lands.

The answer further stated that it was a matter of common knowledge that many of the surveys in Michigan were false and fraudulent, in many cases surveys not having been made

in the field at all, but the field-notes and maps which were
returned being wholly false and fictitious; that in consequence
resurveys were made pursuant to the authority of Congress;
that Congress made appropriations for that purpose, and that
the notes of the resurvey, and the maps of the resurvey,
became the notes of the survey; that the Federal authorities
and the state authorities accepted the resurveys as the only
valid surveys, and had acted upon these resurveys as such
from that time until the filing of this bill.

It was denied that any of the lands mentioned and referred
to in the bill were in fact swamp or overflowed lands within
the meaning of the act of Congress; and stated that there
had been a reorganization of the Flint and Père Marquette
Railroad Company, and that a new corporation had been
organized to take the title of the original company, and that
all the lands mentioned had been certified by the Secretary
of the Interior and the Commissioner of the General Land
Office to the State of Michigan as lands identified as being
within the act of June 3, 1856, for the benefit of the Flint
and Père Marquette Railroad Company.

It was further averred that no patents were issued under
the grant of June 3, 1856, to the railroad company, but that
the title passed by statute, which title was made complete
by the identification and certification of the United States
Land Office at Washington; that the greater portion of these
lands had been offered for sale for more than twenty years, and
more than four-fifths of them had been in fact sold, and that
many of the parcels had been occupied by purchasers for more
than fifteen years, and that the title of these purchasers had
never been questioned until the filing of this information.

The answer claimed that the certification of the lands
under the railroad grant was itself an adjudication by the
Secretary of the Interior that the lands were not of the
character described in the Swamp Land Act of 1850, and
was a conclusive adjudication that said lands were included
within the railroad grant of 1856.

The answer further stated that if the State did become
the owner, as specified in the bill, so much time had elapsed

that the State was prohibited by law, by its own statute of limitations, from bringing any suit for the recovery of the lands; that the claim of the State was stale; and that so much time had elapsed, and other rights had become so involved by the issue of bonds by the railroad company secured upon these lands, and by the sale of so large a portion of the lands to parties who bought in good faith, that the State should be held estopped from now raising the question at issue; and further, because the State of Michigan had, by virtue of special acts of its legislature, caused lists to be made of these lands and sent to the assessing officers, and that for many years, under the authority of the State of Michigan, they had been specially assessed as railroad lands, and the railway company had paid many thousands of dollars for taxes imposed upon them under these acts of the legislature.

The answer also alleged that application was made by the railway company in 1870 to the commissioner of the state land office to know whether any of these lands were claimed by the State as swamp lands, and the company was then advised by the commissioner of the state land office that the State did not lay any claim to any of the lands in question; and reiterated the averment of estoppel.

Proofs were taken and upon hearing a decree was entered in the court below in favor of complainant, declaring the title to be in the State; that the cloud thereon arising from the claim of defendants be removed; and referring the cause to a commissioner to take evidence of taxes paid by defendants on the lands and the value of the timber cut therefrom; whereupon the cause was taken by appeal to the Supreme Court of Michigan, which reversed the decree and directed the bill to be dismissed with costs. *State* v. *Flint & Père Marquette Railroad*, 89 Michigan, 481. The cause was then brought by writ of error to this court.

*Mr. W. L. Webber* for the motion.

*Mr. A. A. Ellis*, Attorney General of the State of Michigan, opposing.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The Supreme Court of Michigan held that the State might be estopped by its acts, conduct, silence, and acquiescence; that the only question necessary to be considered and determined was the question of estoppel; and, after a full consideration of the facts applicable to this branch of the case, reached the conclusion that the claim of the State had no foundation in equity, justice, or good conscience; that it had become stale; and that the State was estopped to assert title in itself to the lands in question. As its judgment thus rested upon the decision of a question which was not Federal, this court has no jurisdiction to review it, and the writ of error must be dismissed. *Adams County v. Burlington & Missouri Railroad*, 112 U. S. 123; *Israel v. Arthur, ante*, 355.

*Writ of error dismissed.*