THE STATE OF KANSAS, *ex rel. C. C. Coleman, as Attorney-general,* v. THE KANSAS NATURAL-GAS COMPANY.

No. 14,315.   (81 Pac. 506.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Foreign Corporation—Ouster— Action of Charter Board.* In a proceeding in the nature of *quo warranto,* brought by the state to oust a foreign corporation from the exercise of corporate franchises in this state, this court will not review the action of the charter board in refusing an application made to it by defendant for permission to transact business here.

2. CONSTITUTIONAL LAW—*Federal Question not Presented.* The allegations of the answer considered and held not to present a federal question.

Original proceeding in *quo warranto.* Opinion filed July 7, 1905. Judgment for plaintiff.

### STATEMENT.

THIS is an original proceeding in *quo warranto,* instituted in this court by the state on relation of the attorney-general, to oust the Kansas Natural-gas Company, a corporation organized under the laws of the state of Delaware, from the exercise of corporate franchises in this state. The following allegations are made in the petition:

"(3) The said defendant, as a non-resident corporation of the state of Kansas, has never been authorized or in anywise qualified to engage in business in said state or to exercise any of its corporate powers or functions therein, and has never received or been accorded any license or permission from the charter board of said state authorizing or empowering it to transact business or exercise any of its corporate powers or functions in said state, nor has the secretary of said charter board ever issued to it a certificate setting forth that any application by it to said board to transact business in said state had been granted.

"(4) Notwithstanding the said defendant has never
50—71 KAN.

received license or permission to transact business in said state of Kansas or exercise its corporate functions and powers therein, or in anywise qualified itself to engage in business in said state, it does engage, and for three months or more last past has engaged, in business in said state as a non-resident corporation, and does exercise, and during the said time has exercised, its corporate powers and functions in said state, and therein, in the county of Montgomery and other counties in said state, has and does engage in the business of buying and selling land and of making, taking and assigning leases of lands for the purpose of prospecting on and developing the same for petroleum oil and natural gas, and does prospect for, develop and produce petroleum oil and natural gas, and has and does lay and maintain pipes or mains for the transportation of natural gas, and does purchase and has purchased the property and lines of mains or pipes of other gas-producing and gas-piping and transporting corporations, companies, and persons, and has and does purchase said gas from the owners of gas-wells, and transports said gas in its said pipes or mains and sells the same to consumers, and contracts with other corporations and with companies and persons for the laying of pipes or mains for the transportation of natural gas, and in divers ways and manners gives out and pretends that it is a corporation duly and legally authorized to transact business as such in the state of Kansas, and in divers ways and manners does exercise the business and franchise of a corporation engaged in the business of producing, transporting and selling natural gas, contrary to the statutes of said state of Kansas made and provided."

The prayer of the petition asks that defendant be ousted of the franchise and privilege of being a corporation authorized to do business in this state, and that its officers, agents, employees and servants be prohibited and restrained from engaging on its behalf in any corporate business or from the exercise of any corporate function in this state

The defendant filed an answer, and later an amendment thereto, admitted that the Kansas Natural-gas Company was a foreign corporation, but alleging that

before beginning to transact business in Kansas it presented to the charter board an application, on blanks supplied by the secretary of state, setting forth all things requisite and necessary to be stated, in the manner and form prescribed by statute, to entitle it to a certificate from said board authorizing it to do business in this state; that it also tendered the charter fee required to be paid, to the amount specified in the law for corporations having a capital stock equal to that of defendant. It further alleged that divers persons in the natural-gas-producing section of the state, including the owners of brick-kilns, glass plants, cement-works, ore-smelters, and like manufacturing institutions, wrongfully combined and conspired together to prevent defendant from transporting its gas from or out of the counties wherein the same is produced, with the purpose of securing a monopoly in the use of gas, and confining its use to the particular location where it is found, and depriving citizens of this state outside of the gas-producing districts of the use of natural gas for fuel and light; that such a result would be a great and permanent damage and injury, not only to the defendant but to every citizen in the state without the counties where gas is found, and would operate against public policy and the common good of the state. The following averment was made:

"(6) Further answering the petition herein, this defendant avers and charges that at the hearing upon its said application before the said charter board a large number of persons from Montgomery and adjoining counties, Kansas, wherein the natural gas of this defendant is being found and produced, in furtherance and pursuance of the illegal and wrongful combination and conspiracy recited and set forth in the last preceding paragraph, appeared before the said committee and delivered speeches of so highly inflammatory a nature, without any evidence whatever in support thereof, that the said board was thereby influenced, as this defendant believes, against the better judgment of the members thereof, and without

warrant of law refused the application of this defendant for registration."

An amendment to the answer set out that defendant made application to the charter board as a foreign corporation, and that it had announced that it would pipe gas to the cities of Kansas from the gas-fields, and would pipe gas out of the state to Joplin, Mo., and other places, as it had a right to do, and then began to lay pipes preliminary to doing such business; that the charter board arbitrarily refused to grant defendant a license to do business in the state, and listened to public clamor and the suggestions of persons from the locality where gas was produced.

It was further alleged that the statute of this state concerning the admission of foreign corporations is void, being contrary to the commerce clause of the constitution of the United States in this, that the said charter board may prevent the piping of gas from Kansas to other states where it is needed, and thereby arbitrarily, as a charter board, regulate and control in that respect certain provisions of the interstate commerce of this state; that it is contrary to the constitution of the United States because it places beyond the legislature, and into the hands of the board, without reason and responsibility, the power to prevent any and all foreign corporations from doing business in the state of Kansas, and, further, because it deprives or may deprive foreign corporations of their property without due process of law, and refuses to them equal protection of the laws, as guaranteed by section 1 of the fourteenth amendment to the constitution of the United States.

The plaintiff demurred to the answer and the amendment thereto upon the ground that no sufficient facts were stated therein to constitute a defense. A motion was also filed by the plaintiff for judgment on the pleadings. By agreement of parties the case is to be

decided finally and on its merits on the motion and demurrer.

*C. C. Coleman,* attorney-general, *Waggener, Doster & Orr, Mayo Thomas,* and *Ziegler & Dana,* for The State.

*F. J. Fritch, S. H. Piper, C. E. Benton, H. C. Dooley, J. K. Cubbison, John J. Jones, James W. Lee, Cornelius D. Scully,* and *Eugene Mackey,* for defendant; *E. F. Ware,* and *Gleed, Ware & Gleed,* of counsel.

The opinion of the court was delivered by

GREENE, J.: It may be conceded that defendant complied with all the statutory requirements, in its application to the charter board, necessary to favorable action by that body in its behalf. This court cannot, however, in this proceeding review the action of that tribunal. The law reads:

"The charter board shall hold at least one meeting each month, in the office of the secretary of state, and at such other times as may be deemed necessary, subject to call by the secretary. The board shall make a careful investigation of each application and shall inquire especially with reference to the character of the business in which the proposed corporation is to engage, and if the board shall determine that the business or undertaking is one for which a corporation may lawfully be formed, and that the applicants are acting in good faith, the application shall be granted; and the secretary of the board shall issue a certificate setting forth the fact that the persons named in the application have been authorized by the charter board to form a private corporation as set forth in the application, reciting the proposed name and character thereof. In passing upon the application of a foreign corporation, the board shall also make special inquiry with reference to the solvency of such corporation, and for this purpose may require such information and evidence as they may deem proper. If they shall determine that such corporation is properly organized in accordance with the laws of the state, territory, or

foreign country under which it is incorporated, that its capital is unimpaired, and that it is organized for a purpose for which a domestic corporation may be organized in this state, the application shall be granted, and the secretary of the board shall issue a certificate setting forth the fact that the application has been granted and that such foreign corporation may engage in business in this state as hereinafter provided." (Gen. Stat. 1901, § 1263.)

Whether defendant may resort to mandamus to compel the charter board to issue a certificate entitling it to engage in business in this state is an immaterial consideration. This is a proceeding in *quo warranto,* brought by the state because of the fact that the charter board did deny the application of defendant for a license to do business here, and, notwithstanding such action of the board, the gas company has proceeded to transact business authorized under its Delaware charter. The allegations of the answer present to us the same questions which the charter board decided adversely to defendant.

Counsel for defendant call to their aid the equitable doctrine requiring a court to look upon that as done which ought to be done. In effect they ask us to sit in review of the adverse ruling of the charter board, and to hear and decide *de novo* the application of their client for leave to transact business in this state. An assumption of such power would overturn the clearly expressed intention of the legislature to vest in the charter board, instead of a court, the right to decide the very questions we are urged to determine.

The proceeding brought against defendant in this case is collateral to the proceeding before the charter board. To this proceeding the latter is not, and cannot be made, a party. Therefore the court cannot sit in judgment on the action of the charter board in refusing defendant's application. Suppose it were to do so. Its judgment could not be in the form of mandamus to the charter board requiring the issuance

of a license or permit to defendant, but could only be that the charter board should have granted the application. That, however, would not be the granting of the application by the tribunal in which the authority to make such grant resides. Defendant would still be without a license or permit to do business.

The case of *The State, ex rel., v. Buckland,* 23 Kan. 259, is in point. Buckland was a justice of the peace, and candidate for reelection. Goit was the opposing candidate. The board of canvassers declared in favor of Goit, and issued to him a certificate of election. He filed his bond and qualified as required by law. On Buckland's refusal to vacate the office the state instituted *quo warranto* proceedings against him. He set up the claim that he was in fact elected, and that he had instituted contest proceedings to retain the office. It was held that the pendency of such contest between Buckland as contestor and Goit as contestee was no defense in an action in the nature of *quo warranto* brought by the state against Buckland to oust him from office.

This court cannot usurp the lawful functions of the charter board.

On the federal question brought into the case by the amendment to the answer, it is established law that foreign corporations, except interstate-commerce corporations, and those organized for a federal purpose, have no right to do business nor any right of existence out of the state of their creation, except such as the legislature of the state into which they seek to migrate chooses to accord them. (*The State v. Book Co.,* 65 Kan. 847, 69 Pac. 563; *Paul v. Virginia,* 75 U. S. 168, 19 L. Ed. 357; *Pembina Mining Co. v. Pennsylvania,* 125 id. 181, 8 Sup. Ct. 737, 31 L. Ed. 650; *Phila. Fire Association v. New York,* 119 id. 110, 7 Sup. Ct. 108, 30 L. Ed. 342.)

In its sworn application to the charter board for a certificate entitling defendant to transact business in

Kansas, made by its president and secretary, the following statement appears:

"The full nature and character of the business in which said corporation proposes to engage within the state of Kansas is . . . the transportation of oil and natural gas within the state of Kansas."

It appears from the answer that under its original charter defendant was incorporated for the purpose, among others, of transporting oil and gas within both the states of Kansas and Missouri. Later, on July 27, 1904, it relinquished its right to transport oil and gas in Missouri, and restricted its operations to Kansas alone. This was done by a resolution adopted by the unanimous vote of its stockholders, which reads:

"(1) By striking out of section 3 of said charter the words 'states of Missouri and Kansas' and inserting in lieu thereof the words 'state of Kansas,' so that said section amended reads as follows:

"The objects and purposes for which this corporation is formed are, to do any or all of the things herein set forth to the same extent as natural persons might or could do, viz.: To produce, purchase and acquire natural gas; to pipe, convey and transport natural gas from the place or places where the same is produced, purchased or acquired to such cities, towns, villages and places in the state of Kansas as may afford convenient and satisfactory market for the same."

We find nothing in the answer or amendment thereto constituting a defense to the action. A judgment of ouster is entered against the defendant, as prayed for in the petition.

All the Justices concurring.